The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Hugh Edward WALTON, Defendant–Appellant.

No. 05CA2262.

Colorado Court of Appeals, Division VI.

May 31, 2007.

Rehearing Denied July 19 2007.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Hugh Edward Walton, Pro Se.

Opinion by Chief Judge DAVIDSON.

Defendant, Hugh Edward Walton, appeals from the trial court's order denying his Crim. P. 35(c) motion for postconviction relief. We affirm in part, reverse in part, and remand.

Following a jury trial, defendant was convicted of two counts of aggravated robbery, one count of theft, two counts of menacing, one count of crime of violence, and four habitual criminal counts. The trial court sentenced defendant to an aggregate term of 128 years in the Department of Corrections. Defendant appealed, and a division of this court affirmed the convictions, rejecting defendant's arguments of alleged *Miranda* violations, improper identification, improper admission of evidence, improper limitation on his testimony, and erroneous habitual criminal adjudication. *People v. Walton*, 2004 WL 1088349 (Colo.App. No. 01 CA2119, May 13, 2004) (not published pursuant to C.A.R. 35(f)).

Thereafter, defendant filed a Crim. P. 35(c) motion for postconviction relief, which the trial court denied.

### I. IAD

Because a portion of defendant's arguments regarding the Interstate Agreement on Detainers (IAD), § 24–60–501, art. III(a), C.R.S.2006, has merit, we first address those arguments.

Defendant contends that his convictions and sentence must be vacated because the state failed to comply with the mandatory requirements of the IAD by not conducting his trial within the IAD's 180–day timeframe. In response, the People express no concern that defendant may have fully served his Utah sentence before the 180day timeframe elapsed, but argue that: (1) the IAD did not

apply because defendant was serving a probation sentence in a Utah county jail, which is not a "term of imprisonment in a penal or correctional institution" under the IAD; (2) even if the IAD applies, defendant waived his rights under the IAD by not raising the issue before the trial court; and (3) defendant is precluded from raising the IAD issue in a postconviction motion because he did not raise it on direct appeal. We agree with defendant that the IAD applied and that he did not receive a trial within the 180-day timeframe of the IAD. However, we agree with the People that, under the circumstances here, defendant waived his IAD rights. But we further conclude that defendant may raise the issue in an ineffective assistance of counsel claim.

The IAD is a congressionally sanctioned interstate compact among forty-eight states, the District of Columbia, the Virgin Islands, and the United States. *Bolden v. Murray*, 841 F.Supp. 742, 746 (E.D.Va.1994). It facilitates the speedy disposition of untried charges against defendants who are imprisoned in another state. *See Johnson v. People*, 939 P.2d 817, 819–20 (Colo.1997); *see also People v. Walton*, 167 P.3d 163, 165, 2007 WL 1557760 (Colo.App. No. 05CA2262, May 31, 2007). Federal law governs interpretation of the IAD. *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *People v. Higinbotham*, 712 P.2d 993 (Colo.1986).

In interpreting the IAD, our standard of review is de novo. *Moody v. Corsentino*, 843 P.2d 1355, 1370 (Colo.1993).

In relevant part, the IAD provides:

Whenever a person has entered upon *a term of imprisonment in a penal or correctional institution* of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint ... .

Section 24–60–501, art. III(a) (emphasis added).

Here, it is not disputed that defendant was convicted and sentenced to one to fifteen years in the Utah Department of Corrections. However, the sentence was suspended provided that defendant serve a one-year term in a county jail while completing a drug and alcohol treatment program. While defendant was serving his one-year jail term, the Arapahoe County (Colorado) District Attorney filed a detainer against him. On August 6, 1999, defendant submitted to his warden, pursuant to § 24–60–501, art. III(a), and Utah Code Ann. § 77–29–5, art. III(a) (2006), a formal request for the disposition of untried charges pending against him in Arapahoe County, Colorado, which was duly transmitted to the Arapahoe County District Attorney. On August 27, 1999, while defendant was still serving his Utah sentence, the Arapahoe County District Attorney declined defendant's IAD request, indicating that the IAD did not apply to defendant because he was "serving a probation sentence in a county jail and ha[d] never been committed to[a]state[correctional]institution."

After defendant completed his yearlong sentence in the Utah county jail, he was returned to Arapahoe County, Colorado. The record indicates that defendant was arraigned in county court on December 10, 1999. After a preliminary hearing on January 4, 2000, he was bound over to Arapahoe County District Court and was arraigned in that court on January 26. His case was reset for further arraignment or disposition on February 29, and a jury trial was set for August 7, 2000. Ultimately, defendant's trial began on May 14, 2001. It also appears from the record that defendant had appointed counsel at every court appearance, although it is not clear whether the same attorney was present each time.

### A. Jail Sentence

On appeal, the People argue that the district attorney was correct that the IAD

did not apply while defendant was serving his one-year Utah jail sentence. We disagree. We conclude that the IAD can apply to jail sentences as well as to prison sentences, even when a defendant's jail term is part of a sentence to probation.

Under the statute's plain language, the IAD applies when a defendant enters a "term of imprisonment in a penal or correctional institution." Section 24–60–501, art. III(a). A "term of imprisonment" is a definable period during which an inmate must be confined to satisfy the sentence that has been ordered. *See United States v. Dobson,* 585 F.2d 55 (3d Cir.1978); *People v. Brown,* 854 P.2d 1332, 1336 (Colo.App.1992). Thus, a "term of imprisonment" begins at the time a defendant is sentenced. *See United States v. Muniz,* 1 F.3d 1018, 1025–26 (10th Cir.1993); *Romans v. Dist. Court,* 633 P.2d 477, 480 (Colo.1981), limited on other grounds by *People v. Higinbotham, supra,* 712 P.2d at 999; *Hughes v. Dist. Court,* 197 Colo. 396, 401, 593 P.2d 702, 705 (1979); *People v. Helmstetter,* 914 P.2d 474, 477–78 (Colo.App.1995). Here, defendant had already been sentenced to the Utah jail and was serving his sentence at the time he made his formal request for the disposition of his outstanding charges and, thus, was serving a "term of imprisonment."

Furthermore, we determine that, for purposes of the IAD, the Utah jail in which defendant was serving his one-year sentence is a "penal or correctional institution." We have found no federal case addressing specifically whether a jail is a "penal or correctional institution" under the IAD when it is the facility to which a defendant is ordered to serve his or her sentence. However, the states that have enacted the IAD give various titles to the facilities in which they hold those who are sentenced to incarceration. In some, a jail is termed a penal institution, whereas in others it is not. *Compare State v. Cole,* 238 Kan. 370, 710 P.2d 25, 27–28 (1985) ("penal institution" is generic term referring to any local or statewide building housing inmates for purpose of inflicting punishment), *with State v. Wade,* 105 Nev. 206, 772 P.2d 1291, 1294 (1989) (jail is not a penal or correctional institution). Because the IAD is a uniform act, officials who receive

IAD disposition requests from out-of-state inmates should not be required to research or guess whether the other state treats its jails as "penal or correctional institutions." Cf. *Felix v. United States,* 508 A.2d 101, 106 (D.C.1986) (noting the impracticality and uncertainty that would result if the IAD were read to require state officials to research a prisoner's rehabilitative status in another state's penal or correctional system).

Moreover, construing "penal or correctional institutions" to include jails as well as prisons is consistent with the purpose of the IAD, which is to encourage the expeditious disposition of untried charges because such charges obstruct programs of prisoner treatment and rehabilitation. *See* § 24–60–501, art. I. In some states, defendants may be ordered to serve sentences in either a prison or a jail, and the jails in some jurisdictions offer rehabilitative programs just as prisons sometimes do. *See Escalanti v. Superior Court,* 165 Ariz. 385, 799 P.2d 5, 7–9 (Ct.App. 1990); *State v. Lock,* 839 S.W.2d 436, 444 (Tenn.Crim.App.1992).

Thus, many courts that have addressed this issue have concluded that to apply the IAD only to inmates ordered to serve sentences in facilities designated as "prisons" rather than jails would frustrate the rehabilitative purposes of the IAD. *See Escalanti v. Superior Court, supra,* 799 P.2d at 8–9; *Felix v. United States, supra,* 508 A.2d at 105–06; *State v. Lock, supra,* 839 S.W.2d at 444. The courts that have held to the contrary have done so under the assumption that jails either provide no rehabilitation programs or function only as temporary holding facilities. *See State v. Wade, supra,* 772 P.2d at 1294 (assuming that rehabilitation programs do not exist in jails); *State v. Breen,* 126 Idaho 305, 882 P.2d 472, 474–75 (1994) (same); *State v. Fay,* 763 So.2d 473, 476 (Fla.Dist.Ct. App.2000) (assuming that rehabilitative programs in jails will necessarily be disrupted anyway because court assumed that jails are only temporary holding facilities).

We further note a long line of decisions recognizing the strong interest that an individual incarcerated in one state has in resolving outstanding criminal charges of another state that result in the lodging of a detainer

against him or her. *See, e.g., Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Norris v. Georgia*, 522 F.2d 1006 (4th Cir.1975); *Felix v. United States, supra*, 508 A.2d at 105–06 (noting that outstanding detainers can have other detrimental effects on an inmate's treatment, including ineligibility for certain work assignments or work release programs, denial of certain cell accommodations, denial of the possibility of parole, and even potential classification as a higher custody risk); *People v. Higinbotham, supra*, 712 P.2d at 997 (explaining that before enactment of the IAD, virtually any law enforcement officer could lodge a detainer and more than 50% of detainers were allowed to lapse without disposition).

We thus agree with those jurisdictions that have concluded that, for purposes of the IAD, facilities where inmates are sentenced to incarceration are penal or correctional institutions. *See Escalanti v. Superior Court, supra*, 799 P.2d at 7–9 (citing *Black's Law Dictionary*; also noting that courts have found no legally significant difference between jails and prisons in other contexts); *State v. Lock, supra*, 839 S.W.2d at 444.

We further conclude that the IAD applies regardless of the fact that a jail or prison sentence was part of a probation sentence, as it may have been here. As discussed, the plain language of the IAD applies whenever a person has entered upon a "term of imprisonment in a penal or correctional institution." Section 24–60–501, art. III(a). The IAD does not except from its scope a term of imprisonment that is part of a probation sentence, and we will not rewrite the statute to so indicate. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 705, 125 S.Ct. 2129, 2135, 161 L.Ed.2d 1008 (2005) (court must interpret statute as written); *In re Adoption of C.A.*, 137 P.3d 318, 329–30 (Colo. 2006) (court cannot rewrite a statute).

Therefore, based on the plain language of the statute, we agree with defendant that the IAD applied to his one-year probation sentence in the Utah county jail because he was convicted, sentenced, and incarcerated for a definable period of time in a penal or correctional institution.

### B. Waiver

■ Nevertheless, despite the fact that he did not receive his trial within 180 days of his IAD compliance request, we agree with the People that dismissal of defendant's convictions is not required on these grounds. This is because, as the People point out, defendant did not raise the IAD issue to the trial court at the time his trial date was set. Therefore, he waived the IAD's protections. *See People v. Moody*, 676 P.2d 691, 695 (Colo.1984) (IAD is not jurisdictional and therefore a defendant waives the IAD's protections if he or she does not raise the issue before the trial court); *People v. Newton*, 764 P.2d 1182, 1188–89 (Colo.1988) (if defendant does not expressly object to a trial date set beyond IAD timeframe, he or she waives its protections).

■ In addition, because defendant did not raise the IAD issue on direct appeal, he is precluded from seeking dismissal on these grounds for the first time in a postconviction motion. *See* Crim. P. 35(c)(3)(VII).

### C. Ineffective Assistance of Counsel as to IAD

However, it is precisely because his lawyer failed to timely raise the IAD issue in the trial court that defendant now contends, properly on postconviction review, that he was denied his constitutional right to effective assistance of trial counsel. We remand for an evidentiary hearing on this claim.

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was constitutionally deficient and (2) that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Davis v. People*, 871 P.2d 769, 772 (Colo.1994).

■ The proper standard for evaluating counsel's performance, the first prong of the *Strickland* ineffective assistance test, is whether the lawyer's assistance was reasonable under prevailing professional norms considering all the circumstances of the case.

*See Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2065. Judicial scrutiny of counsel's performance must be highly deferential, must evaluate acts and omissions from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Ardolino v. People,* 69 P.3d 73, 76 (Colo.2003).

With respect to the second prong of an ineffective assistance claim, the proper standard is whether a defendant has shown a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington, supra,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Here, in his motion, defendant alleged that his trial counsel's failure to timely raise the IAD issue was deficient because counsel did not investigate the IAD issue but simply relied on the legal assessment provided in the letter from the district attorney. He also alleged that counsel ignored his repeated requests to raise the issue to the trial court. With respect to the prejudice prong, he alleged that, but for counsel's unprofessional errors, there was a reasonable probability that, even if counsel had timely raised the IAD issue, the court would not have granted him a trial within the 180–day timeframe and, therefore, his charges would have been dismissed.

However, the trial court denied defendant's motion without a hearing. Consequently, there is no evidence or findings of fact that would permit us to evaluate, as a matter of law, defendant's allegations of deficient performance and prejudice. For example, there is no evidence or findings indicating why defendant's trial counsel chose not to raise the IAD issue, what the circumstances were at the time, and what the prevailing professional norms in similar circumstances were.

Furthermore, there are no findings, and the record is unclear, as to when defendant's lawyer had the first meaningful opportunity to raise the IAD issue: we note that defendant was initially arraigned in county court on December 10, 1999; his first appearance before the district court was not until January 26, 2000, ten days before the expiration of the 180–day timeframe on February 6; and his initial trial date of August 4, 2000 was not set until his February 29 appearance, which was after IAD time period had run.

Similarly, if there had been a hearing, in the absence of evidence to the contrary, for example, we could simply presume that the trial court would have complied with the law, *see, e.g., Lockhart v. Fretwell,* 506 U.S. 364, 370, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993) (in showing prejudice, a defendant cannot simply assume that his or her case would have been decided by a "lawless decisionmaker"). However, without an evidentiary hearing, defendant had no opportunity to at least attempt to prove that, had his lawyer timely raised the IAD issue, the court nonetheless would not have granted him a trial within the 180day timeframe (or would have denied a reasonable continuance for good cause, as statutorily permitted).

Accordingly, defendant's claim of ineffective assistance of counsel for failure to raise the IAD issue requires factual determinations that only a trial court is entitled to make. Therefore, although we venture no prediction as to the likelihood of defendant's success in demonstrating either deficient performance or prejudice, we must remand the claim to the trial court for an evidentiary hearing and for the entry of specific findings. *See Ardolino v. People, supra,* 69 P.3d at 76 (when record is insufficient for appellate court to determine as a matter of law whether counsel's performance was deficient and prejudicial, court must remand for evidentiary hearing).

## II. Other Claims of Ineffective Assistance of Counsel

Defendant asserts three other instances in which he allegedly was denied effective assistance of counsel. Because the record is sufficient to establish that these contentions are not persuasive, we address them here. *See Ardolino v. People, supra,* 69 P.3d at 75 (motion for postconviction relief pursuant to Crim. P. 35(c) may be denied without an evidentiary hearing if the record establishes

that the defendant's allegations would fail to establish one or the other prong of the *Strickland* test).

### A. Dissimilar Robberies

We disagree with defendant that his attorney was ineffective in failing to argue that, unlike the robbery here, defendant committed the robbery in Utah using high-tech equipment and wore no disguise.

 The record is to the contrary. It shows that defendant's lawyer asserted that the Utah robbery was not similar to the robbery here, cross-examined the victim of the Utah robbery about defendant's use of an earpiece (the high-tech equipment), an item not used in the robbery here, and the victim of the Utah robbery testified that defendant wore a bandage under his eye, which could be described as a disguise. The fact that defendant's lawyer did not seek to further distinguish the robberies is simply a matter of trial strategy and cannot constitute ineffective assistance of counsel. *See People v. Rodriguez,* 914 P.2d 230, 294–95 (Colo.1996).

### B. Police Questioning

Before trial, defendant filed a motion to suppress statements he made to police officers; the trial court held a hearing on the motion and then denied it. On direct appeal, a division of this court affirmed the trial court's ruling. Defendant contends that he was denied effective assistance of counsel because his lawyer did not raise the issue of allegedly unlawful police questioning. However, this contention was raised and resolved in defendant's direct appeal and cannot be a basis for relief under Crim. P. 35(c). *See* Crim. P. 35(c)(3)(VI); *People v. Versteeg,* 165 P.3d 760 (Colo.App. 2006) (defendant may not use Crim. P. 35(c) to relitigate an issue resolved on direct appeal).

### C. Cumulative Error

Because we rejected all but one of defendant's ineffective assistance claims, there are not multiple errors to compound. Thus, defendant can be awarded no relief on the basis of cumulative error. *See People v. Roy,* 723 P.2d 1345, 1349 (Colo.1986).

### III. Claims Not Appropriate for Review

Last, because defendant could have, but did not, raise them on direct appeal, we do not address his contentions that his convictions and sentence should be vacated because (1) the trial court improperly allowed a juror substitution; (2) the trial court improperly required defendant to wear a shock belt while in plain view of the jury; (3) the trial court allowed the jury to view a videotape of defendant allegedly committing another robbery, without first allowing defendant to view the videotape; and (4) the trial court abused its discretion by allowing the jury to view the videotape. *See* Crim. P. 35(c)(3)(VII) (court shall deny any claim that could have been presented in an appeal previously brought).

The order is reversed as to defendant's ineffective assistance claim regarding the IAD, and the case is remanded for an evidentiary hearing on that claim as set forth in this opinion. In all other respects, the order is affirmed.

Judge WEBB and Judge FURMAN concur.