FILED
United States Court of Appeals
Tenth Circuit

July 8, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PATRICK WOOD,

        Petitioner-Appellant,

v.

KEVIN MILYARD, Warden, Sterling
Correctional Facility; THE
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

        Respondents-Appellees.

No. 09-1348

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:08-CV-00247-WYD)**

Kathleen A. Lord of Lord Law Firm, LLC, Denver, Colorado, for Petitioner-
Appellant.

John J. Fuerst III, Senior Assistant Attorney General, State of Colorado, Denver,
Colorado (John W. Suthers, Attorney General, with him on the brief), for
Respondents-Appellees.

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Patrick Wood's case has labored its way through the state court system, through the lower federal courts, all the way to the United States Supreme Court — and back again — for the better part of three decades. Today, we take one step closer to a final resolution.

Twenty-seven years ago Mr. Wood entered a pizza delivery store to commit a robbery. It ended badly: he wound up shooting and killing the assistant manager. As Mr. Wood sought to flee, restaurant employees heroically captured and disarmed him, holding him until the police arrived. After a bench trial, Mr. Wood was convicted of first degree felony murder, second degree murder, and several lesser charges. When his direct appeal and state habeas efforts proved fruitless, Mr. Wood turned his eye to federal court. Eventually, this court rejected Mr. Wood's federal habeas petition as untimely, noting on its own motion that the statute of limitations barred his way.

That, however, turned out to be anything but the end of things. The Supreme Court took Mr. Wood's case and reversed. Though it did not question the untimeliness of Mr. Wood's petition, the Supreme Court did question this court's decision to raise the issue *sua sponte*. It was the Supreme Court's judgment that the State of Colorado had waived any statute of limitations defense. *Wood v. Milyard*, 132 S. Ct. 1826, 1834-35 (2012).

So it is the case now returns to us. We find ourselves facing two claims on which this court originally granted a certificate of appealability: one alleging that

Mr. Wood's double jeopardy rights were violated by his simultaneous convictions for first and second degree murder in a case involving the death of a single victim, the other alleging that Mr. Wood's waiver of his Sixth Amendment right to a jury trial was not voluntary, knowing, and intelligent because of his attorney's bad advice.

Before we can get to the merits, however, the State insists another procedural problem blocks our way. Colorado points to a state court rule — one that, it says, required Mr. Wood to bring his double jeopardy and Sixth Amendment claims to court long ago, in his state court direct appeal. *See* Colo. R. Crim. P. 35(c)(3)(VII). In the State's view, Mr. Wood's failure to obey this rule — to exhaust a formerly available (but now surely long gone) chance to present his arguments in his direct appeal — amounts to a procedural default that precludes him from raising his double jeopardy and Sixth Amendment arguments now, in a federal habeas proceeding.

The State has something of a point. The Supreme Court has instructed us to heed "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). After all, federal criminal defendants can forfeit even meritorious constitutional claims by failing to observe federal procedural rules. And "a proper respect for the States require[s] that federal courts give to the state procedural rule the same effect they

give to the federal rule." *Id.* at 746. Otherwise, state proceedings might be relegated to a mere "'tryout on the road' for what will later be the determinative federal habeas hearing," *id.* at 747, essentially permitting state court defendants to "avoid the exhaustion requirement by defaulting their federal claims in state court," *id.* at 732. All this amounts to "a strong prudential reason, grounded in considerations of comity and concerns for the orderly administration of criminal justice, not to pass upon a [procedurally] defaulted constitutional claim presented for federal habeas review." *Dretke v. Haley*, 541 U.S. 386, 392-93 (2004) (internal quotation marks omitted). As a matter of comity and federalism, then, we will usually hold our tongues about any potential federal law violation lurking in the background of a state procedural default.

To preclude our review, however, the defaulted state rule must be both "independent" of federal law and "adequate" to support the judgment. *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011); *Coleman*, 501 U.S. at 729-30, 750. Even then we may still take up the lurking federal question if the petitioner can show some real "cause and prejudice" or "a fundamental miscarriage of justice" arising from a failure to do so. *Walker v. Attorney Gen. for State of Okla.*, 167 F.3d 1339, 1344 (10th Cir. 1999) (citing *Coleman*, 501 U.S. at 750).

The problem Colorado confronts in this case concerns the "adequacy" requirement. For our purposes we assume (without deciding) that Rule 35 *does* require double jeopardy and Sixth Amendment claims to be brought in a direct

- 4 -

appeal. We also accept that a rule along these lines could prove "adequate" in many cases. Indeed, we've already recognized as much with respect to Colorado's Rule 35 itself. *See, e.g.*, *Gladney v. Copenhaven*, 508 F. App'x 717, 720 (10th Cir. 2013); *Wallin v. Estep*, 433 F. App'x 689, 690 (10th Cir. 2011).

Our case, however, is peculiar because of its age.

How? A defendant's default of a state procedural rule won't prove "adequate" to bar our review of an underlying federal claim if the state rule wasn't "firmly established and regularly followed [at] the time of the purported procedural default." *Walker*, 167 F.3d at 1344-45 (alteration omitted) (internal quotation marks omitted). After all, a "defendant cannot be expected to comply with a procedural rule that [did] not exist at the time," of his supposed default, "and should not be deprived of a claim for failing to comply with" a rule that didn't exist. *Id.* at 1345; *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (procedural bar must be "'firmly established and regularly followed' by the time as of which it is to be applied"); *Beard v. Kindler*, 558 U.S. 53, 63-64 (2009) (Kennedy, J., concurring) (state courts may not "bar review of federal claims by invoking new procedural rules without adequate notice to litigants"); Brian R. Means, *Federal Habeas Manual* § 9B:30 (2013 ed.) (collecting cases).

That principle is dispositive in this case. It is because the version of Rule 35 the State invokes in this case was added to the books only in 2004, many years *after* Mr. Wood purportedly defaulted his double jeopardy and Sixth Amendment

claims by failing to include them in his direct appeal way back in 1989. *See* Colo. Sup. Ct., *Rule Change 2004(2)* (2004), *available at* http://www.courts.state.co.us/userfiles/File/Court_Probation/Supreme_Court/Rule _Changes/2004/2004%282%29.doc. In fact, the version of Rule 35 in force at the time of Mr. Wood's direct appeal (and putative default) expressly *allowed* defendants to *choose* whether to bring federal constitutional claims in a direct appeal or during collateral review. *See* Colo. R. Crim. P. 35(c)(2) (1984); *People v. Rodriguez*, 914 P.2d 230, 254 (Colo. 1996) (rejecting the notion that, at that time, "claims available on direct appeal may not be brought in a postconviction proceeding").

Colorado acknowledges this complication but says it doesn't matter. It cites two state cases that, it says, have applied Rule 35's procedural bar language retroactively — to prisoners who didn't face its terms at the time of their direct appeal and who couldn't have complied with its terms even if they had wanted to. Because state courts have applied Rule 35 retroactively in this extraordinary fashion, the State seems to reason, so must we. *See* Appellee's 2010 Supp. Br. 26 (citing *People v. Vondra*, 240 P.3d 493 (Colo. App. 2010), and *People v. Walton*, 167 P.3d 163 (Colo. App. 2007)).

At least two problems confront this argument.

First, the premise on which Colorado proceeds turns out to be highly doubtful. One of the cases the State cites did *not* involve the retroactive

application of Rule 35:  the defendant there took his direct appeal two years *after* the rule was amended.  *See Vondra*, 240 P.3d at 494; Notice of Appeal, *People v. Vondra*, No. 2005CR1772 (Colo. Dist. Ct. Jan. 10, 2007).  In the remaining case, it does not appear that any argument against retroactive application was made by the *pro se* litigant, or that the issue was expressly confronted by the court.  *See Walton*, 167 P.3d at 169.  It is well-settled, moreover, that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004).  Given all this, we have before us little reason to believe that Colorado state courts would, if confronted with a competing argument, actually apply Rule 35's procedural bar in the retroactive fashion the State suggests.

Second and in any event, the State's conclusion doesn't follow from its (problematic) premise.  Whether to apply procedural default doctrine out of respect for state rules is a *federal* question that state court decisions do not control.  *See Lee v. Kemna*, 534 U.S. 362, 375 (2002).  And, as we have already seen, a state procedural rule is not "adequate" to prevent federal habeas review as a matter of federal law if it "comes into being after the time for compliance has passed."  *Walker*, 167 F.3d at 1345.  While comity and federalism concerns generally lead us to defer to state procedural rules, that deference also must be tempered by constitutional due process considerations.  And asking us to apply a

state rule retroactively to individuals *after* the time for complying has long since run — a sort of sentence-first-verdict-later procedure — would raise serious due process concerns. As a sister circuit has explained:

> [A] state procedural rule . . . will not preclude review of federal claims where its application in a particular case does not satisfy constitutional requirements of due process of law.
> . . . .
> [The procedural rule here] operated retroactively . . . affording [defendant] no opportunity to attempt to comply with the new provision before suffering the deprivation it imposed. We cannot find such an interpretation of [state] procedural law to be an independent and adequate state ground . . . .

*Spencer v. Kemp*, 781 F.2d 1458, 1470-71 (11th Cir. 1986) (en banc). Precisely the same reasoning and conclusion apply here.

Confident that procedural default doctrine does not bar our way, we turn at last to the merits and in doing so first take up Mr. Wood's double jeopardy claim. Because state courts never adjudicated that claim on the merits, our review is *de novo*. *See* 28 U.S.C. § 2254(d).

The double jeopardy clause performs at least two functions. Most obviously, it protects a defendant from the hazards of a second trial for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 365 (1983). But the Supreme Court has also interpreted the clause to protect a defendant from "multiple punishments for the same offense." *Whalen v. United States*, 445 U.S. 684, 688 (1980). More specifically, this second feature of double jeopardy doctrine "prevent[s] the sentencing court from prescribing greater punishment than the legislature

intended." *Hunter*, 459 U.S. at 366.  Simply put, a court cannot impose cumulative punishments for the same offense unless the legislature has authorized it to do so.  "It may be a nice question whether this rather simple and intuitive rule flows more naturally from the double jeopardy clause or from the Constitution's separation of powers, but whatever its source, the result . . . is the same."  *United States v. Christie*, ___ F.3d ___, Nos. 11-2106, 11-2221, 2013 WL 2477252, at *12 (10th Cir. June 11, 2013) (citation omitted).

We agree with Mr. Wood that this aspect of double jeopardy doctrine prohibits his simultaneous convictions for first and second degree murder.  The Colorado Supreme Court has expressly held that the Colorado "legislature intended to permit the same defendant to suffer only one conviction of murder for the killing of any single victim."  *Candelaria v. People*, 148 P.3d 178, 180-81 (Colo. 2006); *see also People v. Lowe*, 660 P.2d 1261, 1269-71 (Colo. 1983), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo. 1984); *People v. Hickam*, 684 P.2d 228, 231 (Colo. 1984).  That conclusion about state legislative policy, coming as it does from the state high court, binds us. *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998).  And it means one of Mr. Wood's convictions must go:  he has two murder convictions in a case involving the death of a single victim, one conviction more than the Colorado legislature permits.

For its part, the district court thought double jeopardy wasn't offended because of *Blockburger v. United States*, 284 U.S. 299 (1932). In *Blockburger*, the Supreme Court introduced the "same elements test" as a proxy for legislative intent. *Christie*, 2013 WL 2477252, at *13. "This test requires us to inquire whether each offense at issue contains an element not contained in the other. If the answer is yes, we are told to say the legislature authorized punishments for both offenses; if the answer is no, we are instructed to say legislature authorized punishment for only one offense." *Id.* (alterations omitted) (citation omitted) (internal quotation marks omitted); *see also United States v. Dixon*, 509 U.S. 688, 696 (1993). The district court acknowledged that Mr. Wood stood convicted of both first and second degree murder but held each offense contains elements not contained in the other. Given this, the district court reasoned that no *Blockburger* — and by extension, no double jeopardy — problem existed.

The difficulty is that a *proxy* for legislative direction must give way when we have *express* legislative direction already in hand. In this case, we have unambiguous rulings from the Colorado Supreme Court that the Colorado legislature will tolerate but one murder conviction per death. We are not at liberty to ignore that guidance and replace it with the results of a proxy test intended only to fill gaps when express legislative direction is unavailable. *See Garrett v. United States*, 471 U.S. 773, 779 (1985) ("[T]he *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part

- 10 -

of" the legislature); *Christie*, 2013 WL 2477252, at *13 (same); *cf. Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes here.").

Notably, the State does not attempt to invoke *Blockburger* but asks us to affirm the district court only on alternative grounds.

First, Colorado argues that there's no meaningful double jeopardy problem present in this case because Mr. Wood's second murder conviction didn't result in any additional or separate sentence. No harm, no foul, the State says, because Mr. Wood received only a single life sentence for his two murder convictions.

We don't doubt there's a certain appeal to this argument, but precedent requires us to reject it all the same. Double jeopardy doctrine prohibits cumulative *punishments* the legislature hasn't authorized. And it's long since settled that a conviction, even a conviction without a corresponding sentence, amounts to a *punishment* for purposes of federal double jeopardy analysis. After all, "[e]ven when it results only in a concurrent prison sentence or no prison sentence at all, a conviction surely bears adverse collateral consequences that may not be ignored: its presence on a defendant's record may delay her eligibility for parole or result in an increased sentence under a recidivist statute for a future offense, it may be used to impeach the defendant's credibility and it certainly carries the societal stigma accompanying any criminal conviction. All of this is

plainly 'punishment.'"  *Christie*, 2013 WL 2477252, at \*12 (citation omitted) (internal quotation marks omitted); *see also Ball v. United States*, 470 U.S. 856, 865 (1985).  As a practical matter, Mr. Wood may well wind up serving the same life sentence no matter the outcome of this proceeding.  But as a matter of law, he is entitled to serve it with only one murder conviction on his record.  Our received federal double jeopardy doctrine coupled with Colorado's legislative judgment compel that conclusion.

Second, Colorado suggests that the state court judgment in Mr. Wood's case didn't just merge his murder convictions for the purpose of imposing a single *sentence* but, in fact, recognized only a single *conviction*.

An examination of the state court judgment, however, suggests more nearly the opposite conclusion.  The judgment expressly states that the defendant is "guilty . . . of the offense(s) of" first and second degree murder.  *See* Judgment of Conviction; Sentence; and Order to Sheriff (Mittimus), *People v. Wood*, No. 86CR0123 (Colo. Dist. Ct. Jan. 21, 1987); *see also* Minute Order, *Wood*, No. 86CR0123 (Colo. Dist. Ct. Jan. 21, 1987) ("COURT FINDS AS TO COURT [sic] 1, DEFENDANT IS GUILTY OF SECOND DEGREE MURDER; COUNT 2, GUILTY OF FIRST DEGREE MURDER FELONY MURDER").  The judgment then appears to merge the two convictions *only* for the purpose of imposing as sentence a single prison term of life imprisonment.  *See* Mittimus, *supra* ("Counts 1, 2, & 3 are merged and defendant is sentenced to life"); Minute Order, *supra*

("COURT MERGES COUNTS 1, 2, & 3, AS TO SENTENCE AND ON THOSE THREE COUNTS, IMPOSES A SENTENCE OF LIFE."). At no point does the judgment suggest the court vacated either murder conviction as it had to.

Any doubt about the judgment's effect is dispelled by the way Colorado state courts have treated it. In many proceedings over many years, they have consistently understood Mr. Wood's judgment as reflecting two distinct murder convictions, if only one prison sentence, and they have analyzed the two murder convictions quite independently. *See, e.g.*, *People v. Wood*, No. 87CA0273, slip op. at 1 (Colo. App. May 4, 1989) (Mr. Wood "appeals from a judgment of conviction on counts of second degree murder, felony murder, [and others] . . . ."); *People v. Wood*, No. 86-CR-123, slip op. at 1 (Colo. Dist. Ct. Sept. 8, 2004) ("Defendant seeks to challenge his 1987 convictions and sentencing for second degree murder and first degree felony murder . . . ."); *People v. Wood*, No. 04CA2252, slip op. at 1 (Colo. App. Aug. 3, 2006) ("[T]he court found defendant guilty of felony murder and second degree murder. . . . During sentencing, the trial court merged the murder . . . counts."). For its part, moreover, the Colorado Supreme Court has acknowledged that multiple murder convictions *can* and sometimes *do* exist in a Colorado state court judgment even when only one sentence is entered. In these circumstances, that court has not hesitated to order the second murder conviction vacated. *See People v. Glover*,

893 P.2d 1311, 1313-15 (Colo. 1995); *see also People v. Blankenship*, 30 P.3d 698, 709 (Colo. App. 2000). Neither may we.

Third, the State seems in places to invite us to look behind the holdings of the Colorado Supreme Court. Though that court has clearly and repeatedly held that it is the Colorado legislature's policy to permit only one murder conviction per death, the State suggests we may disregard these holdings because in reaching them the state supreme court relied not on statements of legislative policy but on other factors (like the rule of lenity) to reach its result, and did so without double jeopardy implications in mind.

We decline the invitation. The Colorado Supreme Court has held that "the legislature intended to permit the same defendant to suffer only one conviction of murder for the killing of any single victim." *Candelaria*, 148 P.3d at 180-81. Under our precedent, we "are bound" by the state supreme court's "determination of the [state] legislature's intent" with respect to multiple punishments. *Cummings*, 161 F.3d at 615. We may not look behind it. Indeed, it would fit quite uneasily with the sort of federalism and comity concerns we normally hear invoked by the States and generally respect to allow a federal court to look behind a state supreme court's holding on a matter of state legislative intent and question whether it is adequately supported.

Having proceeded this far, we arrive at a point where our conclusion is dictated by a simple syllogism. Double jeopardy doctrine prohibits multiple

punishments unauthorized by legislatures. The Colorado legislature has declined to permit multiple murder convictions for a single killing. Mr. Wood currently stands convicted of both first and second degree murder for a single killing. One conviction, therefore, must go.

But which one?

Mr. Wood points out that he challenges only his first degree murder conviction in this habeas proceeding and he reminds us that our authority extends only to it — we must act on that conviction or not at all. At the same time, however, habeas corpus is an equitable remedy. *See Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); 28 U.S.C. § 2243 (directing courts to dispose of habeas matters "as law and justice require"). While fulfilling our duty to remedy the legal defect Mr. Wood identifies, equity suggests that we should also try to give the maximum possible effect to an otherwise lawful trial verdict. Because vacating either murder conviction will suffice to remedy Mr. Wood's double jeopardy complaint, the most equitable result in this case would be one that permits the elimination of his lesser, second degree murder conviction — or at least permits the Colorado courts that tried him to choose which conviction will go. Toward that end, we think the appropriate way forward is to remand this case to the district court with instructions to grant the writ of habeas corpus conditionally. It should vacate the first degree murder conviction Mr. Wood challenges in federal court and over

which we have the power of review if and only if no state court vacates *either* of the two murder convictions within a reasonable time. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (federal court may grant conditional writ to allow a State "an opportunity to correct the constitutional violation"); *Hooks v. Workman*, 689 F.3d 1148, 1208 (10th Cir. 2012) (using "reasonable time" formulation for a conditionally granted habeas writ).

Turning finally to Mr. Wood's Sixth Amendment challenge, we find it holds considerably less promise and can be addressed much more briefly. Before the bench trial that yielded his convictions, Mr. Wood expressly waived his right to a jury. Now, he contends this written waiver was not knowing, voluntary, and intelligent because his attorney failed to explain its implications to him. He seeks an evidentiary hearing to prove all this.

Federal law, however, prohibits us from allowing an evidentiary hearing when the petitioner "failed to develop the factual basis of a claim in State court proceedings," unless the petitioner relies on a new rule of constitutional law or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). A defendant fails the new-factual-predicate test, the Supreme Court has told us, if "there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

That's the case here. Mr. Wood failed to develop diligently the factual basis for his Sixth Amendment claim in state court proceedings. He does not claim to rely on a new rule of constitutional law. And he fails to cite to us any reason why he could not have presented his claim a very long time ago.

To be sure, Mr. Wood *did* raise a Sixth Amendment argument in his state post-conviction trial court proceedings, but it was a *different* one altogether: he claimed he *never* waived his jury right and that his trial counsel waived it without his consent or participation. The state trial and appellate courts rejected that theory and even Mr. Wood later conceded he had indeed personally signed a jury trial waiver form.

Mr. Wood's *current* Sixth Amendment theory — that his attorney failed to explain adequately the implications of waiving the right to trial by jury — first appeared not in his post-conviction state trial court proceedings, not in his opening brief on appeal in his state post-conviction proceedings, but only in his reply brief in that appeal. We do not hesitate to hold that in these circumstances Mr. Wood failed to develop the factual bases for his current claim diligently in state court. Neither, again, is there any hint that Mr. Wood was unaware of the bases for his claim much earlier, including at the time of his state trial court post-conviction proceedings. In very similar circumstances, the Supreme Court held that a defendant's failure to develop an argument at the appropriate time in state court demonstrates a lack of diligence that bars relief in federal court. *See*

*Schriro v. Landrigan*, 550 U.S. 465, 479 & n.3 (2007).  We effectively hold the same here.

At the end of the day, we send this long prolonged case to what we hope and expect will be its final chapter.  We remand with instructions to grant the writ of habeas corpus conditionally:  the district court should vacate Mr. Wood's conviction for first degree felony murder if but only if the state courts have not eliminated either one of his murder convictions within a reasonable time.  Mr. Wood's request for an evidentiary hearing on his Sixth Amendment claim is denied, as is the State's motion to supplement the record on appeal.