24CA2066 Peo v Firkins 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2066
El Paso County District Court No. 19CR1630
Honorable Laura N. Findorff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Andrew Joseph Firkins,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Andrew Joseph Firkins, Pro Se

¶ 1    Defendant, Andrew Joseph Firkins (Firkins), appeals the postconviction court's order denying his Crim. P. 35(c) motion without a hearing. We affirm.

## I.    Background

¶ 2    Firkins and his girlfriend, Shelby Stallwood (Stallwood), lived together and had an open relationship. *People v. Firkins*, slip op. at ¶ 2 (Colo. App. No. 20CA0604, Nov. 10, 2022) (not published pursuant to C.A.R. 35(e)) (*Firkins I*). Stallwood began a relationship with the victim and told Firkins about it. *Id.* Stallwood and the victim spent an afternoon drinking alcohol with Firkins, who was friendly with the victim; afterwards, they all returned to the home Stallwood shared with Firkins and some roommates. *Id.* at ¶¶ 3-6. During this interaction, Firkins told the victim to leave, but Stallwood told Firkins to leave instead. *Id.* at ¶ 6. Stallwood "got pushed from behind" into a doorframe. Her next recollection was "coming to" and seeing the victim "trying to breathe." *Id.* Stallwood called 911 and Firkins "just walk[ed] out the door." *Id.* The victim suffered five gunshot wounds — including two to the back — and died at the scene. *Id.* at ¶ 7.

1

¶ 3     The prosecution charged Firkins with crimes related to the incident, including first degree murder.  He defended on theories of self-defense, force against intruders, and intoxication.  A jury found Firkins guilty of first degree murder, and the district court imposed a mandatory sentence of life in prison without the possibility of parole.  Firkins appealed the judgment of conviction, and a division of this court affirmed.  *See Firkins I.*

¶ 4     Firkins then filed the pro se postconviction motion at issue in this appeal, asserting that (1) there had been a change in law related to the no-duty-to-retreat rule affecting his self-defense claim; (2) he was immune from prosecution under the make-my-day statute; (3) the prosecution's failure to present evidence of premeditation violated his constitutional rights to a fair trial and due process; (4) trial counsel had provided ineffective assistance; and (5) there had been "constitutional offen[s]es," including violations of the Fifth, Sixth, and Fourteenth Amendments based on prosecutorial misconduct, deprivation of due process, and ineffective assistance of counsel.

¶ 5    The postconviction court summarily denied Firkins's motion, rejecting his claim that he received ineffective assistance of counsel and denying his remaining claims as successive.

## II.    Standard of Review and Applicable Law

¶ 6    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

¶ 7    In a Crim. P. 35(c) proceeding, a judgment of conviction is presumed valid, and the defendant bears the burden of establishing his claim. *People v. Corson*, 2016 CO 33, ¶ 25. To warrant a hearing on a Crim. P. 35(c) motion, a defendant must allege facts that, if true, entitle him to relief. *People v. Joslin*, 2018 COA 24, ¶ 4. A postconviction court may deny a Crim. P. 35(c) without an evidentiary hearing where the motion, files, and record clearly establish that (1) the allegations are bare and conclusory; (2) the allegations, even if true, do not warrant relief; or (3) the record directly refutes the defendant's claims. *People v. Duran*, 2025 COA 34, ¶ 15.

¶ 8    We broadly construe pleadings filed by unrepresented litigants "to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer."

*Jones v. Williams*, 2019 CO 61, ¶ 5. But we will not rewrite an unrepresented litigant's pleadings or act as their advocate. *Cali*, ¶ 34. And we will not consider issues that were not raised in a motion for postconviction relief. *Id.*

## III. Analysis

¶ 9 On appeal, Firkins reasserts his claim that he received ineffective assistance of trial counsel because counsel failed to call (1) James Stewart (Stewart), his roommate and "an eyewitness with firsthand accounts"; and (2) defense counsel's investigator. He also claims, for the first time on appeal, that counsel "prejudic[ed] the jury" against him in voir dire. And he reasserts some of his claims of trial error — namely, that (1) he was immune from prosecution under the make-my-day statute; (2) the prosecutor committed misconduct; (3) the trial court erred in instructing the jury; and (4) cumulative error occurred.

¶ 10 We address and reject his claims.

### A. Ineffective Assistance of Trial Counsel

#### 1. Governing Law

¶ 11 A defendant has a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984).

To prevail on an ineffective assistance claim, a defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced him, meaning there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Id.* at 687-88, 694. An ineffective assistance claim fails if the defendant is unable to satisfy either the deficient performance or the prejudice prong of the *Strickland* standard. *Id.* at 697.

### 2. James Stewart

¶ 12 Prior to trial, Firkins moved to dismiss, arguing that he was immune from prosecution under Colorado's make-my-day statute. *See* § 18-1-704.5, C.R.S. 2025. At a hearing on Firkins's motion, Stewart testified that he "did not want [the victim] in the house for he did not feel safe in his presence" and that Stewart heard both Firkins and the homeowner (Stallwood) tell the victim to leave. The trial court heard Stewart's testimony but nonetheless denied Firkins' make-my-day motion, finding that the "victim entered [the] home with permission."

¶ 13    In denying this claim, the postconviction court noted that the *Firkins I* division concluded "that considerable evidence supported the jury's determination" that Firkins did not act in self-defense, "including the fact that the only eyewitness to the murder said that the victim did not threaten or attack defendant." *See Firkins I,* ¶ 22. And even if Stewart's testimony may have supported Firkins's argument that the victim remained on the premises unlawfully, it does not contain any additional facts that would support the use of deadly force in self-defense or defense of premises. *See* §§ 18-1-704, 18-1-705, C.R.S. 2025. Thus, Stewart's purported testimony does not challenge the *Firkins I* division's conclusion that "'it was highly unlikely that a reasonable jury considering the evidence would have accepted [Firkins's] theory of self-defense.'" *Id.* at ¶ 37 (quoting *People v. Estes,* 2012 COA 41, ¶ 43).

¶ 14    And Firkins does not explain how Stewart's testimony, even if true, would have changed the outcome of the trial. *See Duran,* ¶ 15 (a postconviction court may deny a Crim. P. 35(c) motion without a hearing if the allegations, even if true, do not warrant relief). Thus, even assuming that counsel's failure to call Stewart at trial constitutes deficient performance, Firkins fails to demonstrate that,

6

but for counsel's alleged error, the result of the proceeding would have been different.

### 3.     The Defense Investigator

¶ 15     Firkins argues that the defense investigator should have been called as a witness because she would have testified that the victim had an aggravated robbery conviction and was known to possess guns in his truck and home — evidence that would have supported his self-defense claim.  Generally, however, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."  CRE 404(b); *see People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  But Firkins does not argue that the defense investigator could have established that Firkins had knowledge of the victim's prior conviction or acted on the basis of that knowledge.  *Cf. People v. Marquantte*, 923 P.2d 180, 184 (Colo. App. 1995) ("Evidence of [the victim's] past violent acts is . . . relevant only if the defendant can establish that he had knowledge of those acts and acted on the basis of that knowledge.").  Thus, we cannot conclude that trial counsel performed deficiently by not attempting to introduce this testimony.

## 4.     Voir Dire

¶ 16     Next, Firkins faults trial counsel for "prejudicing the jury before the trial started" by asking during voir dire, "Who believes that it is never okay to use a gun against an unarmed person?" Firkins did not raise this specific argument below and "[i]ssues not raised before the district court in a motion for postconviction relief will not be considered on appeal of the denial of that motion." *DePineda v. Price*, 915 P.2d 1278, 1280 (Colo. 1996).  Therefore, we decline to address this argument.

## B.     Successive Claims

¶ 17     Finally, Firkins's remaining claims are successive because he raised them, or could have raised them, in his direct appeal, and he does not assert any exceptions to the successiveness bar in his Crim. P. 35(c) motion or in his opening brief.

¶ 18     Postconviction proceedings are designed to prevent injustices after a defendant's conviction and sentencing, not to provide a perpetual right of review.  *People v. Hampton*, 528 P.2d 1311, 1312 (Colo. 1974).  As a result, a postconviction court must deny a successive Crim. P. 35(c) claim that was, or could have been, raised and resolved in a prior appeal or postconviction proceeding.  Crim.

P. 35(c)(3)(IV), (VII); *see People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996). An argument that does not precisely duplicate an issue that was previously raised and resolved will be precluded if its review is nothing more than a second appeal addressing the same issues but on a recently contrived constitutional theory. *Rodriguez*, 914 P.2d at 249.

¶ 19 In his direct appeal, Firkins asserted that (1) the trial court erred by permitting a detective to offer improper expert testimony; (2) the prosecutor committed misconduct during rebuttal closing argument by suggesting that he had a duty to retreat; (3) the trial court failed to instruct the jury on a relevant basis for self-defense using deadly force; and (4) the cumulative effect of these errors deprived him of a fair trial. *Firkins I*, ¶ 8.

¶ 20 In his Rule 35(c) motion, Firkins asserted that he was immune from prosecution under Colorado's make-my-day statute. *See* § 18-1-704.5. We agree with the postconviction court that, to the extent this claim was not raised on direct appeal as part of Firkins's allegation of instructional error, it could have been. *See* Crim. P. 35(c)(3)(VII); *People v. Walton*, 167 P.3d 163, 169 (Colo. App. 2007) (declining to address contentions that could have been raised on

direct appeal but were not).  Likewise, Firkins's postconviction instructional error claim is successive because the same claim was raised and resolved in *Firkins I.  See* Crim. P. 35(c)(3)(VI).

¶ 21  Specific to his no-duty to retreat claim, his postconviction motion argued that there was a significant change in the law related to Colorado's no-duty-to-retreat rule as it relates to self-defense claims, citing *People v. Monroe*, 2020 CO 67.  He has not reasserted this argument on appeal and, thus we decline to address it.  *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (defendant's "failure to specifically reassert on this appeal all of the claims which the district court disposed of . . . constitutes a conscious relinquishment of those claims which he does not reassert").

¶ 22  Rather, on appeal he changes tack and argues that the prosecutor engaged in misconduct by misrepresenting that he had an absolute duty to retreat during rebuttal closing argument.  We note that *Monroe* was decided before Firkins filed an opening brief in his direct appeal, and *Monroe* did not announce any new rule of constitutional law that was previously unavailable.  The *Firkins I* division, however, held that, even assuming the prosecutor had misstated the law on this point, the statements did not rise to the

10

level of plain error. *People v. Firkins*, slip op. at ¶¶ 28, 31 (Colo. App. No. 20CA0604, Nov. 10, 2022) (not published pursuant to C.A.R. 35(e)). As this claim was resolved in *Firkins I*, it is successive.

¶ 23 Finally, Firkins asserts cumulative error. The *Firkins I* division already considered and rejected a cumulative error argument and disagreed that the errors alleged there (and reiterated here) "substantially prejudiced [Firkins] or deprived him of a fair trial." *Firkins I*, ¶ 49. The only new issue Firkins raises here — ineffective assistance of trial counsel — does not change the cumulative error analysis because we discern no error in the postconviction court's denial of his ineffective assistance of counsel claim.

¶ 24 In sum, the postconviction court properly denied Firkins's claims of trial error as successive because he raised them, or could have raised them, in a previous proceeding and hasn't alleged one of the exceptions to the successiveness bar. *See People v. Taylor*, 2018 COA 175, ¶ 17 (holding that, because the language in Crim. P. 35(c)(3)(VII) is "mandatory rather than permissive," the court must deny any successive claims unless one of the five exceptions applies).

## IV.    Conclusion

¶ 25    The order is affirmed.

JUDGE HARRIS and JUDGE SCHOCK concur.