COLORADO COURT OF APPEALS                                    2016COA134

Court of Appeals No. 14CA0148
Adams County District Court No. 86CR123
Honorable Katherine R. Delgado, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Patrick K. Wood,

Defendant-Appellant.

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Miller and Fox, JJ., concur

Announced September 22, 2016

Cynthia H. Coffman, Attorney General, John J. Fuerst III, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Adam Mueller, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     This is the latest chapter in the efforts of defendant, Patrick K. Wood, to vacate his felony murder conviction and thereby to stand convicted only of second degree murder, aggravated robbery, and menacing.

¶ 2     In 1986, Wood was convicted of felony murder, second degree murder, aggravated robbery, and menacing.  For the past ten years, Wood has sought to remove his felony murder conviction, resulting in a long line of decisions.[1]  These cases include Wood's successful appeal to the United States Supreme Court on the issue of the timeliness of his federal habeas corpus petition.  Following that decision, the Tenth Circuit Court of Appeals conditionally granted Wood's habeas corpus petition, directing that his felony murder conviction would be vacated unless a state court acted within a reasonable time to vacate either his felony murder conviction or his second degree murder conviction.  The Tenth Circuit remanded to the federal district court to enter the conditional grant.  Following the federal district court's entry of a conditional grant of the habeas corpus petition, the state district court granted the People's request

---

[1] We attach a chart as Appendix A of these decisions to illustrate the complex path of litigation involving Wood's convictions.

to vacate the second degree murder conviction, rather than the felony murder conviction.

¶ 3    Wood appeals the state district court's vacation of his second degree murder conviction. He contends that the People did not have authority to request that the state district court vacate his second degree murder conviction, nor did the court have the jurisdiction or authority to do so. Although we conclude that the People had the authority to file their request, we conclude that the district court did not have the authority to rule on it. Accordingly, we vacate the state district court's order. We remand with instructions for the state district court to vacate Wood's felony murder conviction and correct the mittimus accordingly, leaving in place the second degree murder, aggravated robbery, and menacing convictions.

## I.  Background

¶ 4    In 1986, while attempting to rob a pizza delivery store, Wood shot and killed an assistant store manager. After a bench trial, the court convicted Wood of first degree felony murder, second degree murder, aggravated robbery, and two counts of menacing. The court merged the second degree murder and aggravated robbery

2

convictions into the felony murder conviction and imposed a life sentence.

¶ 5    A division of this court affirmed Wood's conviction in an unpublished opinion. *See People v. Wood* (Colo. App. No. 87CA0273, May 4, 1989) (not published pursuant to C.A.R. 35(f)).

¶ 6    In 1995, following his direct appeal, Wood filed a pro se Crim. P. 35(c) motion in the Adams County District Court challenging his felony murder conviction. The district court, however, never acted on the motion. He filed another Crim. P. 35(c) motion in 2004, alleging that the prohibition against double jeopardy was violated because he was convicted of both felony murder and second degree murder of the same victim. The trial court denied his motion under Crim. P. 35(c)(3)(VII), asserting that "each and every one of the grounds asserted could have been presented in an appeal pursued by [Wood] after his conviction."

¶ 7    Wood appealed the denial of his Crim. P. 35(c) motion to a division of our court. The division affirmed, concluding that his challenge to his second degree murder conviction was time barred and his challenge to his felony murder conviction was barred because it could have been raised on direct appeal. *People v. Wood,*

3

(Colo. App. No. 04CA2252, Aug. 3, 2006) (not published pursuant to C.A.R. 35(f)). The supreme court denied certiorari. *Wood v. People*, (Colo. No. 06SC703, Feb. 5, 2007) (unpublished order).

¶ 8     In 2008, Wood filed a second habeas corpus petition, only challenging his felony murder conviction.[2] He contended that convicting him of both felony murder and second degree murder of the same victim violated his right to be free from double jeopardy. *Wood v. Milyard*, No. CIV.A. 08-CV-00247-W, 2009 WL 1973531, at *1 (D. Colo. July 6, 2009), *aff'd*, 403 F. App'x 335 (10th Cir. 2010), *rev'd and remanded*, 566 U.S. ___, 132 S. Ct. 1826 (2012). The Colorado Attorney General did not challenge the timeliness of Wood's habeas corpus petition. After dismissing some claims for failure to exhaust state remedies, the court denied Wood's double jeopardy claim. *Id.* at *6. Wood appealed.

¶ 9     The Tenth Circuit Court of Appeals directed the parties to brief whether the statute of limitations barred Wood's petition. The Attorney General argued that Wood's petition was untimely. *Wood*,

---

[2] Wood's first habeas corpus petition was denied for failure to exhaust state remedies. *See Wood v. Furlong*, No. 94 CV 00219 JLK (D. Colo. March 22, 1995).

403 F. App'x at 336-37. The Tenth Circuit agreed with the Attorney General and denied habeas corpus relief. Wood filed a petition for certiorari, which the United States Supreme Court granted. The Court held that the Attorney General had forfeited its statute of limitations defense and remanded the case to the Tenth Circuit to consider the merits of Wood's appeal. *Wood*, 566 U.S. at ___, 132 S. Ct. at 1830-31.

¶ 10     On remand, the Tenth Circuit held that the Double Jeopardy Clause precluded the imposition of two convictions for a single murder, notwithstanding that the district court had merged the convictions for sentencing purposes. *Wood v. Milyard*, 721 F.3d 1190, 1194-98 (10th Cir. 2013) ("Double jeopardy doctrine prohibits cumulative punishments the legislature hasn't authorized. And it's long since settled that a conviction, even a conviction without a corresponding sentence, amounts to a punishment for purposes of federal double jeopardy analysis."). The Tenth Circuit ordered the federal district court to grant Wood conditional habeas corpus relief and vacate the felony murder conviction, unless the Adams County District Court corrected the double jeopardy error by vacating "either of the two murder convictions":

> Because vacating either murder conviction will suffice to remedy Mr. Wood's double jeopardy complaint, the most equitable result in this case would be one that permits the elimination of his lesser, second degree murder conviction — or at least permits the Colorado courts that tried him to choose which conviction will go. Toward that end, we think the appropriate way forward is to remand this case to the district court with instructions to grant the writ of habeas corpus conditionally. It should vacate the first degree murder conviction Mr. Wood challenges in federal court and over which we have the power of review if and only if no state court vacates *either* of the two murder convictions within a reasonable time.

*Id.* at 1197. On remand, the federal district court entered a conditional habeas corpus writ with similar instructions for the Adams County District Court. *See Wood v. Milyard*, No. 08-CV-00247-WYD, 2014 WL 321075, at *2 (D. Colo. Jan. 29, 2014).

¶ 11    The People then filed the motion for resentencing at issue here in the Adams County District Court. At the resentencing hearing, the People told the court:

> The Order [from the federal district court] requires that the Court to [sic] do a re-sentencing of the Defendant. . . . [T]he Opinion is requiring that the Prosecutor make

6

a selection between Felony Murder and Second Degree Murder at the re-sentencing hearing.[3]

¶ 12    The People did not request that Wood be resentenced, but requested that the court vacate the second degree murder conviction.  The district court subsequently vacated the second degree murder and aggravated robbery convictions and issued an amended mittimus which, contrary to its order, still contained the second degree murder and aggravated robbery convictions, albeit with a note that they were vacated.  Thereafter, the federal district court vacated the conditional habeas corpus petition.  *Wood*, 2014 WL 321075, at *2.

¶ 13    On appeal, Wood contends that the Adams County District Court erred in vacating his second degree murder conviction rather than his felony murder conviction for three reasons: (1) the People had no authority to file the "Motion for Resentencing"; (2) the district court lacked jurisdiction and authority to vacate the second degree murder conviction; and (3) equity dictated that the district court should have vacated the felony murder conviction under the

---

[3] As discussed below, the People incorrectly characterized the Tenth Circuit's mandate and the federal district court's order.

7

verdict maximization doctrine and the doctrine of laches. In the alternative, Wood contends that if the People had authority to request and the district court had jurisdiction and authority to vacate the second degree murder conviction, we must remand to the district court because the district court entered the mittimus incorrectly.

¶ 14 Following oral arguments, we asked for supplemental briefs on (1) how *People v. Spykstra*, 234 P.3d 662 (Colo. 2010), and *People in Interest of E.G.*, 2016 CO 19, 368 P.3d 946, apply to either the People's ability to file the motion for resentencing or the district court's authority to decide the People's motion; (2) whether section 13-1-115, C.R.S. 2016, grants the district court authority or ancillary jurisdiction; (3) whether section 20-1-102, C.R.S. 2016, provides authority for the People's motion for resentencing; and (4) whether the district court had inherent authority to hear this case.

¶ 15 We conclude that the People had authority to file the motion "to resentence." We also conclude that the district court had subject matter jurisdiction over the motion. However, we conclude that the district court did not have authority to rule on the motion and, therefore, it erred in vacating Wood's second degree murder

8

conviction.  Thus, we do not address Wood's contention that equity dictated that the court should have vacated the felony murder conviction, or his contention that we should remand for the district court to remove the second degree murder and aggravated robbery convictions from his mittimus.

## II.    People's Authority to File the "Motion for Resentencing"

¶ 16    Wood contends that the People had no authority to file their motion for resentencing.  We conclude that the People had authority to file their motion.

### A.    Standard of Review

¶ 17    Whether the People had the authority to file a motion before the district court is a question of standing.  *See generally People v. Brothers*, 2013 CO 31, ¶ 8, 308 P.3d 1213, 1215 (holding that whether the district attorney could move to quash third-party subpoenas was a question of standing).  Standing is a question of law that we review de novo.  *Spykstra*, 234 P.3d at 666.

### B.    Applicable Law

¶ 18    In relation to the People's authority, we asked the parties to discuss how two cases — *Spykstra* and *E.G.* — apply to the People's ability to file their motion and to the district court's authority to

9

decide the People's motion. We conclude that *Spykstra* addresses the People's authority to act and *E.G.* addresses a district court's authority to act. We discuss *E.G.* in detail in Part III.C.1.

¶ 19    In *Spykstra*, the district court denied the People's motion to quash two subpoenas duces tecum served by the defendant on the parents of the victim in a child sexual assault case. 234 P.3d at 667. The supreme court held the People had authority to move to quash the subpoenas because they had general authority to act and no statute prohibited them from filing such a motion. *Id.* Further, the limited exceptions to a district attorney's general authority to appear on behalf of the State — such as disqualification and express legislative limitation — did not apply. *Id.*

¶ 20    The court concluded that a district attorney has the general authority to appear and participate in proceedings to which the People are a party under section 20-1-102(1). *Id.* The court further held that only a specific statute or rule can limit the People's general authority.

## C.    Analysis

¶ 21    First, we must address the substance of the People's motion. While the People titled their motion a "motion for resentencing," we

10

do not necessarily consider it as such. *See People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006) (holding that the substance of a motion controls its designation). At the hearing on the motion for resentencing, the People did not request that the court resentence Wood. Rather, they requested that the court vacate Wood's second degree murder conviction. The People also argue that their motion was simply a motion to alert the state district court to the federal district court's conditional grant of habeas corpus. Therefore, we consider the People's motion to have been seeking two different objectives: (1) to notify the state district court about the federal district court's conditional grant of habeas relief and (2) to request the state district court to vacate the felony murder conviction. We address whether the People had authority to file a motion seeking this relief.

### 1. Notification to State District Court

¶ 22    To the extent the People's motion was a motion to notify, we start from the premise that the People had general authority under section 20-1-102. The limited exceptions to a district attorney's general authority to appear on behalf of the State do not apply here.

11

¶ 23    Recognizing that there is no formal mechanism in Colorado for the People to alert a state court of a federal court's conditional grant of a habeas corpus petition, we nevertheless conclude that no statute or rule in Colorado prohibits such a motion by the People.

¶ 24    From a practical perspective, the People need a mechanism to alert a state court that a federal court has granted a conditional habeas corpus petition. If the People do not have such a mechanism, and only defendants do, defendants, in some cases, will have an incentive not to notify the state court about the conditional grant of the habeas corpus petition. Then, the state court could unknowingly fail to consider a conditional habeas corpus grant, and a defendant could force the outcome he or she desires.

¶ 25    The Third Circuit considered this quandary in *Gibbs v. Frank*, 500 F.3d 202, 209 (3d Cir. 2007). There, the federal district court executed a conditional writ directing the state court to retry the defendant within 120 days or release him. *Id.* After the district court issued the writ, several weeks passed before Gibbs' counsel notified the state court of the conditional writ. The Third Circuit noted:

12

> The interests of comity strongly counsel that the issuance of a conditional writ of habeas corpus by a federal court be conveyed promptly to the state trial court that must rectify the constitutional deprivation. In future conditional writ cases, we believe that it is appropriate for the State or Commonwealth to bear the burden of informing state courts about the necessity of a retrial promptly after the conditional writ is issued.

*Id.* at 209 n.6.

¶ 26    Therefore, we conclude that the People had authority to file their motion insofar as they sought to notify the state district court of the federal district court's conditional grant of habeas corpus relief.

## 2.    Effort to Vacate a Conviction

¶ 27    Applying *Spykstra,* we start from the premise that the People had the general authority under section 20-1-102 to appear and participate in proceedings in which they are a party. Like in *Spykstra,* the limited exceptions to a district attorney's general authority to appear do not apply. No district attorney disqualification rule is involved in this case, *see* § 20-1-107(2), C.R.S. 2016, and the General Assembly has not authorized a different body to prosecute this action, *see Harris v. Jefferson Cty.*

13

*Court*, 808 P.2d 364, 365 (Colo. App. 1991) ("[W]hen the General Assembly authorizes a different body to prosecute a particular type of action, then the district attorney is without authority to act.").

¶ 28 Wood contends that Crim. P. 35(c) prohibits the People from filing their motion. However, we address this contention below in the context of whether Crim. P. 35(c) provides the trial court with authority to act in the circumstances presented here.

¶ 29 Therefore, we conclude that the People had authority to file a motion requesting that the state district court vacate Wood's convictions.

III. District Court's Subject Matter Jurisdiction and Authority

¶ 30 Wood next contends that the state district court lacked subject matter jurisdiction and authority to vacate the second degree murder conviction. Although we have concluded the People had authority to move for the court to vacate Wood's second degree murder conviction, we still must address whether the court had authority to vacate the conviction. We conclude that the court had subject matter jurisdiction, but agree with Wood that it lacked authority to vacate his second degree murder conviction. We address each issue in turn.

14

## A.    Standard of Review

¶ 31    We review jurisdictional matters de novo.  *People v. Efferson*, 122 P.3d 1038, 1040 (Colo. App. 2005).

## B.    Jurisdiction

### 1.    Applicable Law

¶ 32    Subject matter jurisdiction is "defined only as a court's power to resolve a dispute in which it renders judgment." *Associated Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n*, 2012 CO 28, ¶ 30, 275 P.3d 646, 652.  A court has subject matter jurisdiction if the case is one of the types of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority.  *Wood v. People*, 255 P.3d 1136, 1140 (Colo. 2011).

¶ 33    The state district court relied on article VI, section 1 of the Colorado Constitution and section 13-1-115 of the Colorado statutes in concluding that it had jurisdiction over Wood's case. Colorado Constitution article VI, section 1 provides:

> The judicial power of the state shall be vested
> in a supreme court, district courts, a probate
> court in the city and county of Denver, a
> juvenile court in the city and county of Denver,
> county courts, and such other courts or
> judicial officers with jurisdiction inferior to the
> supreme court, as the general assembly may,

15

from time to time establish; provided, however, that nothing herein contained shall be construed to restrict or diminish the powers of home rule cities and towns granted under article XX, section 6 of this constitution to create municipal and police courts.

¶ 34 The Colorado Constitution vests district courts with general subject matter jurisdiction in criminal cases:

The district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein, and shall have such appellate jurisdiction as may be prescribed by law.

Colo. Const. art. VI, § 9(1).

### 2. Analysis

¶ 35 While Wood initially contended that the district court did not have subject matter jurisdiction, at oral argument he conceded that the court had subject matter jurisdiction under article VI, sections 1 and 9 of the Colorado Constitution. Therefore, we need not address this issue further.

### C. Authority

¶ 36 Wood contends that the district court had no authority to vacate his second degree murder conviction and that Crim. P. 35(c) does not provide the requisite authority. The People, however,

16

contend that the trial court had authority pursuant to section 13-1-115, ancillary jurisdiction, and inherent authority. We address each contention in turn.

### 1. Law

¶ 37　As previously discussed, we conclude that *E.G.* outlines the approach we must follow in determining whether the court had authority. In *E.G.*, ¶ 4, 368 P.3d at 948, the district court denied a defense motion to allow counsel to access a house where the victims had been sexually assaulted in order to "view and photograph the crime scene," which the defense filed when the homeowner refused access. The district court concluded that it did not have authority over the motion, reasoning "that it had not seen 'any Colorado law, statutory or case law that indicate[d]' that the court had any authority to order the requested access." *Id.*

¶ 38　The supreme court affirmed. The court concluded that it could find no constitutional provision, statute, or rule that provided the district court with authority to grant such access without the homeowner's consent. *Id.* at ¶¶ 30-32, 368 P.3d at 954. Therefore, the court concluded that district court had no authority to issue such an order. *Id.*

17

¶ 39    We conclude that *E.G.* stands for the principle that a court has authority to proceed only if there is express constitutional, statutory, or rule-based authority addressing the particular circumstances before it.  *See generally People v. Madden*, 2015 CO 69, ¶ 7, 364 P.3d 866, 868 (trial court may not order refund of costs, fees, or restitution following a criminal trial without statutory authority to do so); *People v. Nelson*, 2015 CO 68, ¶ 1, 362 P.3d 1070, 1070 (same).

### 2.    Section 13-1-115

¶ 40    The People argue that such an interpretation would be inconsistent with section 13-1-115, which encompasses circumstances that fall within a district court's constitutionally granted general and original jurisdiction to manage criminal cases, and that no statutory provision contradicts section 13-1-115.  We disagree.

¶ 41    As relevant here, section 13-1-115 provides:

> The courts have power to issue all writs necessary and proper to the complete exercise of the power conferred on them by the constitution and laws of this state.

18

¶ 42    We conclude that section 13-1-115 provides no authority here. The People did not ask the court to issue a writ; rather, they requested that the court vacate Wood's second degree murder conviction.

¶ 43    Wood argues that the federal court order granting conditional habeas corpus relief did not compel the state district court to act. The People argued below, and imply on appeal, that the state district court was required to consider the matter. We agree with Wood.

¶ 44    The conditional grants of habeas corpus relief by the Tenth Circuit and the federal district court did not require the state district court to act. If it did nothing, Wood's mittimus would be corrected by the federal district court removing his felony murder conviction and the double jeopardy violations would be remedied. Significantly, neither federal court addressed whether the conditional grant would give the state district court authority to vacate Wood's conviction. Nor did the state district court address its authority to proceed in its order. No Colorado statute, rule, or case provides guidance on this issue.

¶ 45    However, three federal circuit courts of appeal decisions have determined that a federal court cannot remand a habeas corpus action to a state district court, nor could a federal court compel a state court to act under a conditional grant of habeas corpus relief. This precedent indicates that if a federal court does not have authority to issue a conditional grant of habeas corpus relief, it may not compel a state court to act in response to a conditional grant of such relief. *See Billiot v. Puckett*, 135 F.3d 311, 316 n.5 (5th Cir. 1998) ("If the writ is granted, or even conditionally granted, the state, *pursuant to available state procedures*, may then take whatever action it deems necessary, including reinitiating state court proceedings . . . although the case may ultimately find its way back to the state courts . . . [it] is by no means 'remanded' to the state courts."); *see also Hardcastle v. Horn*, 368 F.3d 246, 261 (3d Cir. 2004) (Federal courts lack authority to "remand a habeas corpus petition to a state court."); *Rose v. Lee*, 252 F.3d 676, 688 n.11 (4th Cir. 2001) ("[W]e do not believe that a federal habeas court can remand a case to a state habeas court.").

¶ 46    Therefore, we conclude that section 13-1-115 conferred no authority on the state district court to act in these circumstances.

We further conclude that the federal court orders did not enable the state district court to act based on the authority of section 13-1-115.

### 3. Ancillary Jurisdiction

¶ 47    Ancillary jurisdiction allows a court to decide certain matters related to the principal proceeding.[4] *Nelson*, ¶ 67, 362 P.3d at 1081. The doctrine of ancillary jurisdiction is a doctrine of inherent power that "exists because without it the court could neither effectively dispose of the principal case nor do complete justice in the premises." *People v. Hargrave*, 179 P.3d 226, 229 (Colo. App. 2007) (quoting *Morrow v. District of Columbia*, 417 F.2d 728, 738 n.36 (D.C. Cir. 1969)). Although the doctrine of ancillary

---

[4] Courts have treated "ancillary jurisdiction" as a doctrine relating to both jurisdiction and authority. *Compare People v. Dalton*, 70 P.3d 517, 521 (Colo. App. 2002) (discussing ancillary jurisdiction as a jurisdictional doctrine), *with People v. Hargrave*, 179 P.3d 226, 229 (Colo. App. 2007) (discussing ancillary jurisdiction as a doctrine relating to authority or "power"), *and People v. Nelson*, 2015 CO 68, ¶ 67, 362 P.3d 1070, 1081 ("Ancillary jurisdiction gives us that authority."); *see also Minto v. Lambert*, 870 P.2d 572, 575 (Colo. App. 1993) (describing the inappropriate use of "jurisdiction" and "authority" interchangeably in appellate court decisions). Thus, we address ancillary jurisdiction, while addressing authority, because the People contend that ancillary jurisdiction provided the state district court with authority to vacate Wood's second degree murder conviction.

jurisdiction frequently arises in federal courts, it has also been

applied in certain circumstances in state court proceedings. *Id.*

Accordingly, the *Hargrove* division adopted the *Morrow* court's four-

part test to determine whether a court has ancillary jurisdiction:

> (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter;
>
> (2) the ancillary matter can be determined without a substantial new factfinding proceeding;
>
> (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and
>
> (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated.

*Id.* at 229-30 (quoting *Morrow*, 417 F.2d at 740).

¶ 48    We conclude that the *Hargrave* test is not satisfied here. First,

the "main matter" is Wood's federal petition for a writ of habeas

corpus. Wood filed that petition in federal court under federal law,

and the petition was never before the state district court. Therefore,

the People's "motion for resentencing" arises from the federal writ,

22

and any ancillary jurisdiction undoubtedly exists in the federal court, not the state district court.

¶ 49 Second, the People contend that no new factfinding is necessary, as maximizing the sentence is a question of law. Again, we disagree. The state district court would need to conduct additional factfinding to determine whether the doctrine of laches precluded the People from challenging the second degree murder conviction twenty-six years later, particularly because the state district court did not consider Wood's laches argument. *See Keller Cattle Co. v. Allison,* 55 P.3d 257, 260 (Colo. App. 2002) ("Whether the elements of laches have been established is a question of fact."). Further, the People's unclean hands argument would also require additional factfinding.

¶ 50 Third, we conclude that executing the People's motion would deprive Wood of substantial rights. If we affirm the district court's order vacating the second degree murder conviction, Wood will remain convicted of felony murder even though he only litigated that conviction and prevailed on a constitutional challenge to that conviction in federal court. The People do not contend that it was

improper for Wood to seek habeas corpus relief regarding only one of his convictions.

¶ 51    Fourth, the state district court should have — and could have — vacated the felony murder conviction to protect the integrity of Wood's successful federal habeas corpus petition.

¶ 52    Moreover, at the time of trial, the law was settled that no defendant could suffer two murder convictions for the killing of a single person. *People v. Bartowsheski*, 661 P.2d 235 (Colo. 1983); *People v. Lowe*, 660 P.2d 1261 (Colo. 1983), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo. 1984).  The People had ample notice and opportunity to correct the double jeopardy error before this point.  Immediately following trial, the People could have asked to vacate the second degree murder conviction or, in lieu of that, could have filed a cross-appeal to Wood's direct appeal.  However, the People did neither.

¶ 53    Therefore, we conclude that the district court did not have ancillary jurisdiction to vacate Wood's second degree murder conviction.

## 4. Inherent Authority

¶ 54 We further conclude that the state district court did not have inherent authority to grant the People's motion.

¶ 55 The judiciary has inherent authority to use all powers reasonably required to protect the efficient function, dignity, independence, and integrity of the court and judicial process. *People v. Aleem*, 149 P.3d 765, 774 (Colo. 2007).

¶ 56 The People contend that even if we assume the state district court erred by merging the murder convictions and imposing a single sentence, rather than vacating the second degree murder conviction as the Tenth Circuit Court of Appeals concluded the original sentencing court should have done, the district court had the inherent authority to correct this error. We disagree.

¶ 57 A court's inherent authority is generally limited to matters that are reasonably necessary for the proper functioning of the judiciary. *Bd. of Cty. Comm'rs v. Nineteenth Judicial Dist.*, 895 P.2d 545, 548 (Colo. 1995). As described above, it was not necessary for the state district court to take any action. If the state district court took no action, the federal district court order provided him with exactly the relief he had sought.

¶ 58    Further, the People point to no case suggesting the state district court possessed the inherent power to vacate the second degree murder conviction at their request, and we have found none suggesting such a power.

¶ 59    Therefore, we conclude that the court did not have inherent authority.

### 5.    Crim. P. 35(c)

¶ 60    Even though the People do not argue that Crim. P. 35(c) provided a basis for the trial court to act, we address its applicability because Wood argues that it did not provide a basis for the trial court's authority.[5]  We agree.  Crim. P. 35(c) only authorizes the trial court to vacate a conviction for a Crim. P. 35(c) motion filed by a defendant, not the People.  *See* Crim. P. 35(c)(2) ("[E]very person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds

---

[5] Wood also contends that Crim. P. 35(a) provides no authority. Crim. P. 35(a) motions challenge illegal sentences, and, as noted, although the People's motion was a "motion to resentence," it effectively sought to vacate one of Wood's convictions.

hereinafter set forth.").[6] To conclude that the trial court has authority to rule on a Crim. P. 35(c) motion filed by the People would improperly expand the trial court's postconviction authority.

¶ 61 Therefore, we conclude that Crim. P. 35 does not provide the trial court with authority.

### 6. Maximizing the Jury Verdict

¶ 62 Last, we recognize that in cases like Wood's with double jeopardy violations, "the effect of jury verdicts should be maximized." *People v. Glover*, 893 P.2d 1311, 1314 (Colo. 1995) (following the court's determination that the defendant could not be convicted of both murder after deliberation and felony murder for murder of single victim, the trial properly entered judgment for conviction of murder after deliberation and the underlying felony to maximize the defendant's sentence).

---

[6] No case explicitly holds that the People cannot bring a Crim. P. 35(c) motion; however, this conclusion is supported by the difference in wording of Crim. P. 35(a) and Crim. P. 35(c). *Compare* Crim. P. 35(a) ("The court may correct a sentence . . . ."), *with* Crim. P. 35(c)(1) ("If prior to filing for relief pursuant to this paragraph (1), a person has sought appeal of a conviction within the time prescribed therefor and if judgment on that conviction has not then been affirmed upon appeal, that person may file an application for postconviction review . . . ."); *see also* Crim. P. 35(c)(2).

¶ 63    It is not a foregone conclusion, however, that vacating Wood's second degree murder and aggravated robbery convictions would maximize his sentence. Wood argues that his sentence would have been maximized by vacating the felony murder conviction because then the trial court could have imposed two convictions and two sentences. Further, he contends that when parole eligibility is taken into consideration, he would serve more time if he were sentenced under his second degree murder and aggravated robbery convictions that under his felony murder conviction.

¶ 64    We need not address these contentions because we conclude that the trial court did not have authority to vacate Wood's second degree murder conviction.

IV.   Conclusion

¶ 65    Wood's federal habeas corpus petition exclusively challenged his felony murder conviction. Thus, the state district court's authority was limited — just as the federal district court's authority was limited — to consideration of Wood's felony murder conviction. Therefore, we vacate the state district court's order. We remand with instructions for the state district court to vacate Wood's felony murder conviction and correct the mittimus accordingly, leaving the

second degree murder, aggravated robbery, and menacing

convictions.[7]

JUDGE MILLER and JUDGE FOX concur.

---

[7] This relief is necessary to return the case to the status quo ante before the People filed their motion for resentencing. Otherwise, the state and federal court proceedings might be in a state of uncertainty since the federal district court vacated its order granting federal habeas corpus relief following the state district court granting the People's motion for resentencing.