Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2019 CO 7**

**No. 16SC990, *People v. Wood*,—Double Jeopardy—Multiplicitous Convictions—Sentencing and Punishment—Amendment and Correction.**

The supreme court clarifies that when a mittimus provides that multiplicitous convictions merge, a defendant is afforded the protection to which he or she is entitled under the double jeopardy clause just the same as when a mittimus indicates that all but one of the multiplicitous convictions are vacated.  In the double jeopardy realm, the merger of multiplicitous convictions has the same effect as vacating all but one of them.

The defendant's mittimus accurately documented the state district court's decision to merge his two murder convictions and impose a single life sentence on the resulting merged conviction.  But, in resolving the defendant's habeas corpus petition, the United States Court of Appeals for the Tenth Circuit misread the mittimus as containing two murder convictions for the same killing and found a double jeopardy defect.  Merely because the defendant's mittimus merged the multiplicitous murder convictions, rather than expressly stating that one of them was vacated, does not mean that his double jeopardy rights were violated.

Even if the Tenth Circuit correctly understood the mittimus, any error was clerical in nature. Therefore, the proper remedy was to simply correct the mittimus pursuant to Rule 36 of the Colorado Rules of Criminal Procedure.

Since a division of the state court of appeals assumed that the Tenth Circuit's reading of the mittimus was accurate and then failed to recognize that any error in the mittimus was subject to correction under Rule 36, the supreme court reverses the division's judgment and vacates its opinion. However, given that the state district court recently amended the mittimus to expressly state that one of the multiplicitous murder convictions was vacated, the Court need not remand this matter.

**2019 CO 7**

**Supreme Court Case No. 16SC990**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA148

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Patrick K. Wood.

**Judgment Reversed and Order Vacated**
*en banc*
January 22, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Ryan A. Crane, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Mark Evans, Deputy Public Defender
*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1 "Everything has to come to an end, sometime." L. Frank Baum, *The Marvelous Land of Oz* 182 (1904). Today, we hope to end this protracted habeas litigation and settle once and for all two questions that have plagued federal and state courts in Colorado for more than 12 years: Did Patrick Wood suffer simultaneous convictions for first-degree felony murder (a class 1 felony) and second-degree murder (a class 2 felony) in 1987 for the death of the same victim? And if so, what is the appropriate remedy?

¶2 In addressing Wood's double jeopardy claim, the United States Court of Appeals for the Tenth Circuit answered the first question in the affirmative and addressed the second question by conditionally granting Wood's habeas corpus petition. As a result, it remanded the case to the federal district court with instructions to vacate the first-degree murder conviction and allow the second-degree murder conviction to remain in place, unless the state district court decided within a reasonable time which of the two murder convictions to vacate. Unfortunately, the Tenth Circuit misread Wood's mittimus, and that error set in motion a Palsgrafian[1] chain of rippling events that ultimately landed the case before us. Wood's mittimus actually reflected a single murder conviction: for first-degree felony murder. Thus, no double jeopardy error existed, and no remedy was necessary—the only error was in believing there was an error.

¶3 Following an order by the federal district court effectuating the Tenth Circuit's mandate, the People filed a motion in state district court seeking to vacate the

---

[1] *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928).

second-degree murder conviction. The state district court granted the motion and issued an amended mittimus expressly stating that the second-degree murder conviction was vacated.[2] Wood appealed. In a published, unanimous decision, a division of the state court of appeals reversed and remanded the matter with instructions for the state district court to vacate Wood's first-degree murder conviction and modify the amended mittimus to leave in place the second-degree murder conviction. We now reverse.

¶4 The division hung its hat on the Tenth Circuit's belief that the original mittimus reflected two murder convictions for the killing of a single victim. But the Tenth Circuit misunderstood the original mittimus. Consistent with the state district court's decision during the sentencing hearing to merge the two murder convictions, the original mittimus referenced a single murder conviction (for first-degree murder). Therefore, there was no other murder conviction to be vacated.

¶5 Even if the Tenth Circuit accurately understood the original mittimus, the proper remedy was to simply correct the clerical error pursuant to Rule 36 of the Colorado Rules of Criminal Procedure. Since the state district court has already amended the original mittimus, albeit based on other authority, and the amended mittimus clearly documents that Wood was not convicted of two counts of murder, we need not remand this matter. The state district court's amendment of the original mittimus was akin to a correction of

---

[2] We will refer to the first mittimus, which was signed in 1987, as the "original mittimus," and to the amended mittimus, which was signed in 2014, as the "amended mittimus."

a clerical mistake pursuant to Rule 36. The amended mittimus reflects that Wood stands convicted, as he has for more than 30 years, of a single count of murder.

¶6  Given this disposition, we decline to address the merits of the numerous conclusions reached by the division, including with respect to the scope of a state district court's authority. Instead, we vacate the division's opinion in its entirety.

## I. Factual and Procedural History

¶7  While robbing a pizza delivery store in 1986, Wood shot and killed the store's assistant manager. Following a bench trial, the state district court found Wood guilty of committing five offenses: Count 1, second-degree murder, a class 2 felony naming the assistant manager as the victim;[3] Count 2, first-degree felony murder, a class 1 felony naming the assistant manager as the victim and listing aggravated robbery as the predicate felony; Count 3, aggravated robbery, a class 3 felony naming the assistant manager as the victim; and Counts 4 and 5, felony menacing, class 5 felonies naming two additional victims.

¶8  During the sentencing hearing, Wood's attorney addressed the state district court first. He stated that the first-degree felony murder and second-degree murder convictions "merge[d]" and that the aggravated robbery conviction then "merge[d]" into

---

[3] Count 1 originally charged Wood with first-degree murder (after deliberation), but the court found him guilty of the lesser-included offense of second-degree murder on that count.

4

the felony-murder conviction because aggravated robbery was the predicate offense of the felony-murder conviction. The prosecutor agreed:

> Your Honor, *as to Count[s] [1] and [2], it's my understanding that they do merge and I would ask the Court to enter judgment on the conviction for murder in the first degree* and impose the mandatory sentence of [life imprisonment with the possibility of parole after] forty calendar years as required by statute.

> Judge, *in regards [to] . . . Count [3], aggravated robbery, it's also my understanding that that does merge with the conviction for felony murder;* therefore, I don't believe that the Court is in a position to impose a sentence on the aggravated robbery count and I'm not asking the Court to do that.

(Emphases added.) Defense counsel did not take issue with any of the prosecutor's comments.

¶9 The court concurred with the parties:

> Well, obviously *Counts [1] and [2] on the murder counts merge, and they merge also with the aggravated robbery count[].* So there [will] only be *one sentence involving Counts [1], [2,] and [3].*

> And the Court would just impose *a life sentence* as provided by law . . . .

(Emphases added.) Thus, the court imposed a single sentence (life imprisonment) on Counts 1, 2, and 3.[4] It then imposed prison sentences of four years on Counts 4 and 5, to be served "concurrent with the life sentence."

¶10 Wood's sentences were reflected in the original mittimus subsequently prepared and signed by the state district court. The original mittimus, formally titled "JUDGMENT

---

[4] The court was required to impose a life sentence on the first-degree murder conviction. Further, the first-degree murder conviction was the only conviction for which the court could impose a life sentence.

OF CONVICTION: SENTENCE: AND ORDER TO SHERIFF (MITTIMUS)," read, in

pertinent part, as follows:

> The Defendant was arraigned in this Court upon an . . . Information, . . . to which the Defendant entered a plea of . . . Not Guilty, . . . was found Guilty, . . . by the Court, of the offense(s) of[:]
>
> Count 1, Murder in the First Degree, (convicted of second degree murder) F-2
> Count 2, Murder in the First Degree [felony murder], both counts 1 & 2 [as charged] are C.R.S. 18-3-102, F-1
> Count 3, Aggravated Robbery, C.R.S. 18-4-302, F-3
> Counts 4 & 5, Menacing, C.R.S. 18-3-206, F-5
>
> . . . .
>
> It is now the Judgment and Sentence of the Court that the Defendant be sentenced to the custody of the Executive Director of the Department of Corrections . . . , Colorado for a term of[:]
>
> *Counts 1, 2 & 3 are merged and defendant is sentenced to life*
> Counts 4 & 5, defendant is sentenced to 4 years on each count.
>
> . . . .
>
> *JUDGMENT OF CONVICTION IS NOW ENTERED*
>
> . . . .
>
> IT IS FURTHER ORDERED OR RECOMMENDED:
> Sentences on all counts are to run concurrent.

(Emphases added.)

¶11 After Wood's direct appeal and state postconviction proceedings proved unsuccessful,[5] he sought habeas corpus relief from the federal district court. In his second habeas petition to the federal district court,[6] Wood asserted, among other things, that the state district court's entry of simultaneous first-degree murder and second-degree murder convictions for the death of the assistant manager violated his double jeopardy rights. *Wood v. Milyard*, No. 08-cv-00247-WYD, 2009 WL 1973531, at *5 (D. Colo. July 6, 2009). The federal district court disagreed. It reasoned that Wood's convictions did not violate *Blockburger v. United States* and were consistent with the double jeopardy clause because the crimes of felony murder and second-degree murder "require different proof and are separate and distinct crimes."[7] *Id.* at *6.

---

[5] The court of appeals affirmed Wood's convictions and sentences on direct appeal. *See People v. Wood*, 2016 COA 134, ¶ 5, __ P.3d __ (citing *People v. Wood*, No. 87CA0273 (Colo. App. May 4, 1989)). Wood then petitioned for certiorari review to this court, but we declined to hear his case. He subsequently filed a pro se Crim. P. 35(c) motion in state district court seeking to vacate his first-degree murder conviction on double jeopardy grounds. *Id.* at ¶ 6. Although the state district court ruled on Wood's request for counsel, it never resolved the motion on the merits. Wood submitted another Rule 35(c) motion nine years later, in 2004, claiming that his convictions for first-degree murder and second-degree murder of the same victim violated the prohibition against double jeopardy. *Id.* The state district court rejected the claim, finding that it could have been raised in Wood's direct appeal. *Id.* The court of appeals affirmed, concluding that the challenge to the second-degree murder conviction was time barred and that the challenge to the first-degree murder conviction was barred because it could have been raised on direct appeal. *Id.* at ¶ 7.

[6] Wood's first habeas petition was denied for failure to exhaust state remedies. *See Wood v. Milyard*, 08-cv-00247-WYD, 2009 WL 1973531, at *1 (D. Colo. July 6, 2009) (citing *Wood v. Furlong*, No. 94-cv-00219-JLK (D. Colo. Mar. 22, 1995)).

[7] In *Blockburger v. United States*, 284 U.S. 299 (1932), the United States Supreme Court adopted the "same-elements test" to analyze double jeopardy claims. *United States v.*

7

¶12     The Tenth Circuit affirmed on other grounds. It held that the double jeopardy claim was time barred. *Wood v. Milyard*, 403 F. App'x 335, 339 (10th Cir. 2010). But the United States Supreme Court reversed. It concluded that the Tenth Circuit had abused its discretion in raising the timeliness issue *sua sponte* because the prosecution had twice informed the federal district court that it did not intend to challenge Wood's petition on timeliness grounds. *Wood v. Milyard*, 566 U.S. 463, 474 (2012). The Court thus remanded the case to the Tenth Circuit with instructions to address the merits of Wood's double jeopardy claim. *Id.* at 475.

¶13     On remand, the Tenth Circuit agreed with Wood that the "double jeopardy doctrine prohibit[ed] his simultaneous convictions for first and second degree murder." *Wood v. Milyard*, 721 F.3d 1190, 1195 (10th Cir. 2013). The court was not persuaded by the federal district court's analysis. *Id.* Although acknowledging that the same-elements test ushered in by the Supreme Court in *Blockburger* is a proxy for legislative intent,[8] it determined that such proxy must yield to express legislative intent:

---

*Dixon*, 509 U.S. 688, 696 (1993). Under that test, a court must discern whether each offense in question contains an element that is not contained in the other. *Id.*; *Blockburger*, 284 U.S. at 304. If each offense requires proof of an element that the other offense does not, then the legislature is presumed to have intended to authorize punishment for both offenses. *United States v. Christie*, 717 F.3d 1156, 1173 (10th Cir. 2013). Otherwise, the legislature is presumed to have intended to authorize punishment only for one of the two offenses. *Id.*

[8] The *Blockburger* decision has been deemed to have articulated a rule of statutory construction to stave off double jeopardy concerns. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983). In *Hunter*, the Court determined that the "Double Jeopardy Clause does no

8

> The difficulty is that a *proxy* for legislative direction must give way when we have *express* legislative direction already in hand. In this case, we have unambiguous rulings from the Colorado Supreme Court that the Colorado legislature will tolerate but one murder conviction per death. We are not at liberty to ignore that guidance and replace it with the results of a proxy test intended only to fill gaps when express legislative direction is unavailable.

*Id.*

¶14 Significantly, the Tenth Circuit's ruling was premised on its belief that the original mittimus showed that Wood was convicted of two murder charges for the death of a single victim:

> The [mittimus] expressly states that the defendant is "guilty . . . of the offense(s) of" first and second degree murder. The [mittimus] then appears to merge the two convictions *only* for the purpose of imposing as sentence a single prison term of life imprisonment. At no point does the judgment suggest the court vacated either murder conviction as it had to.

*Id.* at 1196 (internal citations omitted). That Wood received only one sentence for both murder convictions was of little moment to the court because "multiple murder convictions *can* and sometimes *do* exist in a Colorado state court judgment even when only one sentence is entered." *Id.* And, because "it's long since settled that a conviction, even a conviction without a corresponding sentence, amounts to a *punishment* for purposes of federal double jeopardy analysis," the court concluded that Wood had received cumulative punishments without authorization from the legislature. *Id.* at 1195–96.

_____

more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.*

9

¶15    Having found that there was a double jeopardy defect, the Tenth Circuit set out to remedy it, mindful of the equitable nature of habeas corpus relief, which suggested that the court should "try to give the maximum possible effect to an otherwise lawful trial verdict." *Id.* at 1197. At the same time, the court recognized that the only conviction challenged by Wood and over which it had the power of review was the first-degree murder conviction. *Id.* Balancing the concerns before it, the court ultimately decided to "permit[] the elimination of [Wood's] lesser, second degree murder conviction—or at least permit[] the Colorado courts that tried him to choose which conviction [would] go." *Id.* Hence, the court remanded the matter to the federal district court with directions "to grant the writ of habeas corpus conditionally" by vacating the first-degree murder conviction "if and only if no state court vacates *either* of the two murder convictions within a reasonable time." *Id.*

¶16    The federal district court did as instructed and partially granted Wood's habeas petition. *Wood v. Milyard*, No. 08-cv-00247-WYD, 2014 WL 321075, at *2 (D. Colo. Jan. 29, 2014). The People reacted by filing a motion in state district court to have Wood "resentenc[ed]." *See Wood*, 2016 COA 134, ¶ 11. However, at the resentencing hearing, it became clear that the People were not actually seeking to have Wood resentenced. *Id.* at ¶ 12. Instead, they understood the federal district court's order as requiring them to "make a selection between Felony Murder and Second Degree Murder." *Id.* at ¶ 11. The People intended their motion as a vehicle to inform the state district court about the federal district court's order and to request that the second-degree murder and aggravated robbery convictions be vacated. *Id.* at ¶ 12. The state district court granted

10

the People's request, vacated the second-degree murder and aggravated robbery convictions, and amended the mittimus to reflect its ruling. *Id.* Upon learning of the state district court's order, the federal district court vacated the conditional grant of habeas relief. *Id.* (citing *Wood*, 2014 WL 321075, at *2).

¶17 Wood appealed, and the division vacated the state district court's order. *Id.* at ¶ 65. At the outset, it found that the People had authority to file a motion which, notwithstanding its title, sought to alert the state district court to the federal district court's conditional grant of habeas relief and requested that Wood's second-degree murder conviction be vacated. *Id.* at ¶¶ 26, 29. But the division then determined that, while the state district court had subject matter jurisdiction to vacate the second-degree murder conviction, it lacked authority to do so. *Id.* at ¶¶ 30, 46, 53, 59, 61. Because Wood's habeas petition challenged only the first-degree murder conviction, the division concluded that the state district court's authority was limited to consideration of that conviction. *Id.* at ¶ 65. Therefore, the division vacated the state district court's order and remanded the matter with instructions for the state district court "to vacate Wood's felony murder conviction and correct the mittimus" in order to leave in place "the second degree murder, aggravated robbery, and menacing convictions." *Id.*

¶18 The People sought certiorari review.[9]

---

[9] We granted certiorari on the following question:

> Whether the court of appeals erred in finding that the district court lacked the authority to vacate the defendant's conviction for second degree

11

## II. Analysis

¶19    The People accurately note that the state district court expressly indicated during the sentencing hearing that the two murder convictions and the aggravated robbery conviction merged into a single conviction for first-degree murder. They correctly add that the state district court then imposed a single sentence of life imprisonment for that first-degree murder conviction. However, the People aver that the original mittimus "misstate[d] the sentencing court's judgment" simply because it "recited that Wood was found guilty of felony murder, second-degree murder and aggravated robbery." The People characterize this as a clerical error and maintain, for the first time, that Rule 36 authorizes its correction.

¶20    Wood counters that the People's clerical-error premise has already been rejected by the Tenth Circuit, the division, and the state district court, and is, in any event, inconsistent with statements the People themselves have made in these proceedings. In the alternative, Wood contends that Rule 36 does not apply because any error in the original mittimus was not clerical, as it must be attributed to the exercise of judicial consideration or discretion.

---

murder, where the record of the sentencing hearing and the original mittimus reflected that the guilty verdicts for second [degree] murder, first degree felony murder, and aggravated robbery merged, resulting in the imposition of a single life sentence.

12

¶21     Both parties misunderstand the original mittimus.  The original mittimus contained neither a double jeopardy defect nor a clerical error.  Rather, it reflected a single murder conviction.  It follows that there was no other murder conviction to be vacated. That the original mittimus documented the state district court's guilty verdicts does not alter the analysis.

¶22     We recognize that the Tenth Circuit reached a contrary conclusion.  But we are not bound by the Tenth Circuit's reading of a state district court's mittimus.  Even assuming the Tenth Circuit was correct in its reading of the original mittimus, any error was merely clerical.  Consequently, the proper remedy was to have the state district court correct the mittimus pursuant to Rule 36.  Because the original mittimus has already been amended by the state district court and, as amended, clearly reflects that Wood stands convicted of only one count of murder (first-degree murder), we need not remand the matter.[10]  The state district court's amendment of the original mittimus was akin to a correction of a clerical mistake pursuant to Rule 36.  Accordingly, we reverse the division's judgment and vacate its opinion.

**A.  The Original Mittimus Did Not Violate the Double Jeopardy Clause**

¶23     As the Tenth Circuit recognized, the double jeopardy doctrine prohibits "cumulative *punishments* the legislature hasn't authorized." *Wood*, 721 F.3d at 1195.  Even

---

[10] Neither party argues that the amended mittimus fails to accurately reflect the state district court's 2014 ruling granting the People's motion to vacate the convictions for second-degree murder and aggravated robbery.

13

a conviction unaccompanied by a sentence bears sufficiently adverse collateral consequences to amount to punishment for purposes of double jeopardy analysis. *Id.* at 1195–96; *cf. People v. Lowe*, 660 P.2d 1261, 1269 (Colo. 1983) ("There are a significant number of important collateral consequences for a felony conviction beyond that of the sentence imposed"; therefore, "two convictions for one killing result in enhanced collateral punishment."), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo. 1984).

¶24    The Tenth Circuit concluded that Wood received cumulative punishments for the murder of the assistant manager based on its belief that the original mittimus reflected convictions for both first-degree murder and second-degree murder.[11] *Wood*, 721 F.3d at 1196. Therein lies the primary flaw in the Tenth Circuit's decision.

¶25    As relevant here, the original mittimus stated that Wood was "found Guilty . . . by the Court" of: Count 1, second-degree murder; Count 2, first-degree murder; and Count 3, aggravated robbery. It then declared that the convictions on Counts 1, 2, and 3 "merged" and Wood was sentenced to one life imprisonment term on the resulting

_____

[11] The Tenth Circuit ostensibly equated a guilty verdict with a conviction. In Colorado, "[t]he meaning of 'conviction' may vary depending on the statute in which it is used." *People v. Hampton*, 876 P.2d 1236, 1239 (Colo. 1994). A guilty verdict is regarded as a "conviction" in some contexts. *See, e.g.*, § 16-7-206(3), C.R.S. (2018) ("The acceptance by the court of a plea of guilty . . . acts as a conviction for the offense."); *Hafelfinger v. Dist. Court*, 674 P.2d 375, 378 (Colo. 1984) ("In the context of a deferred judgment and sentence, a 'conviction' occurs upon the acceptance by the trial court of the defendant's plea of guilty . . . ."). For purposes of our analysis, we assume that each of Wood's guilty verdicts was a "conviction."

14

merged conviction. By merging the convictions on Counts 1, 2, and 3, and imposing a single sentence of life imprisonment—a sentence required for first-degree murder, but unavailable for second-degree murder and aggravated robbery—the state district court memorialized in the original mittimus that there was one conviction for the murder of the assistant manager, a first-degree felony murder conviction. Given the state district court's decision to merge the three convictions and impose a single sentence of life imprisonment on the resulting merged conviction, the fact that the original mittimus recited all of the crimes Wood was found guilty of did not fly in the face of the double jeopardy clause. Nothing in double jeopardy jurisprudence prohibits the documentation of guilty verdicts in a mittimus, judgment of conviction, or sentencing order.

¶26     The Tenth Circuit nevertheless found a double jeopardy defect because it read the original mittimus as stopping short of "vacat[ing] either murder conviction." *Id.* We disagree with this interpretation.

¶27     At the outset, we recognize, as did the Tenth Circuit, that under Colorado law, "[o]nly one conviction of murder is permitted for the killing of one victim." *Lowe*, 660 P.2d at 1270–71. As we explained in *Lowe* more than thirty-five years ago, "[i]t would be a strange system of justice that would permit the defendant to be sentenced to two . . . sentences for the killing of one person." *Id.* at 1271; *see also People v. Bartowsheski*, 661 P.2d 235, 246 (Colo. 1983) ("Because the defendant caused the death of one victim and only one victim, our decision in *Lowe* requires that only one judgment of conviction for first degree murder be entered."). While *Lowe* involved multiplicitous convictions for *first-degree* murder, we have extended the rule we announced there to a situation like the

15

one before us now. *See People v. Hickam*, 684 P.2d 228, 231 (Colo. 1984) (applying the holding in *Lowe* to convictions for second-degree murder—as a lesser-included offense of first-degree murder, after deliberation—and first-degree felony murder). Thus, Wood may not stand convicted of both first-degree murder and second-degree murder for the killing of the assistant manager. *See id.*

¶28 "Where multiplicitous convictions are found," the appropriate remedy "'is . . . to vacate one of the underlying convictions as well as the . . . sentence based upon it.'" *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007) (quoting *Rutledge v. United States*, 517 U.S. 292, 301–02 (1996)). And we have made clear that, in determining which conviction or convictions should be vacated to honor the double jeopardy clause, a trial court "should be directed to enter as many convictions and impose as many sentences as are legally possible to fully effectuate the jury's verdict." *People v. Glover*, 893 P.2d 1311, 1315 (Colo. 1995).

¶29 It is true, of course, that the original mittimus did not expressly state that one of Wood's murder convictions was "vacated." However, by merging the two murder convictions and imposing a single sentence for first-degree murder, the state district court necessarily vacated the conviction for second-degree murder, thereby avoiding multiplicitous convictions. Stated differently, "[m]erger ha[d] the same effect as vacating one of the multiplicitous" murder convictions. *People v. Rhea*, 2014 COA 60, ¶ 17, 349 P.3d 280, 288.

¶30 We discussed the concept of merger in *Boulies v. People*, 770 P.2d 1274 (Colo. 1989). There, we explained that "[i]n Colorado, the rule of merger precludes a conviction for a

16

crime that is the lesser included offense of another crime for which the defendant has also been convicted in the same prosecution." *Id.* at 1282. Inasmuch as the predicate felony underlying the felony-murder conviction there reflected "the commission of the very same aggravated robbery for which the defendant was separately charged and convicted, the aggravated robbery conviction . . . was a lesser included offense of the felony murder conviction." *Id.* at 1280. Therefore, the "conviction for aggravated robbery merged into the conviction for the greater inclusive offense of felony murder." *Id.* at 1282; *see, e.g.,* *Reyna-Abarca v. People*, 2017 CO 15, ¶ 4, 390 P.3d 816, 818 (concluding, in the context of a double jeopardy claim, that "DUI is a lesser included offense of both vehicular assault-DUI and vehicular homicide-DUI, and thus, defendants' DUI convictions must merge into the greater offenses").

¶31    But we have also implicitly acknowledged the application of the rule of merger outside the context of a lesser-included offense, such as where the defendant has been convicted on more than one count of murder for the death of a single victim. For example, in *People v. Miller*, we noted that, "[u]nder the doctrine of merger, the felony murder conviction and the first-degree murder (after deliberation) conviction [had] merged, giving rise to only one sentence." 113 P.3d 743, 745 (Colo. 2005). Similarly, in *People v. Harlan*, a capital case, we relied on a sentencing phase instruction that informed the jury that "Harlan's convictions for first degree murder after deliberation and first degree felony murder merged." 8 P.3d 448, 509 (Colo. 2000), *overruled on other grounds by Miller*, 113 P.3d at 748–50; *accord Dunlap v. People*, 173 P.3d 1054, 1088 (Colo. 2007) (rejecting Dunlap's claim that the jury relied on improper convictions in imposing a death sentence

17

because it was instructed during the sentencing phase of the proceeding that "the first-degree murder after deliberation and first-degree felony murder verdicts merged into a single conviction for each victim").

¶32    The genesis of the observation in *Miller* and the instructions in *Harlan* and *Dunlap* was *Lowe*, where we held that first-degree murder (after deliberation) and first-degree felony murder are not separate offenses, but are alternative ways of committing the crime of first-degree murder.  660 P.2d at 1268–71.  In *Lowe*, we applied the rule of lenity, which requires courts to resolve ambiguities in a penal code's substantive prohibitions and penalties in the defendant's favor, and concluded that, even where an offense does not qualify as a lesser-included offense under the same-elements test, the court may nevertheless be required to vacate the conviction for that offense.  *Id.* at 1269 ("The rule of lenity requires that the first-degree murder statute be construed to favor the defendant[,]" and "[t]hat construction is that a defendant can be convicted only of one first-degree murder for one killing.").  It was in part for that reason that we rejected *Blockburger*'s same-elements test as controlling in that case.  *Id.* at 1266.  We reasoned that, while the same-elements test is useful in determining whether a lesser offense merges into a greater offense, it is not suitable where, as here, "the accused has been charged with committing the same crime in alternative ways, *e.g.*, first-degree murder by felony murder and after deliberation."  *Id.* at 1266–67.

¶33    We acknowledge that we did not "merge" Lowe's multiplicitous murder convictions; instead, we "vacated" them and remanded the case to the trial court to amend the mittimus in order to reflect a single murder conviction.  *Id.* at 1271–72.  But

18

there is nothing talismanic about the word "vacate" in the double jeopardy realm. Indeed, although we ordered the trial court to "vacate" Lowe's multiplicitous murder convictions on remand, we also referred to the concept of merger in our analysis: "[W]e believe that *Blockburger* is an acceptable test only in resolving the issue of whether one offense is *merged into another* by reason of identity of elements." *Id.* at 1266–67 (emphasis added). We nowhere drew a distinction between vacating and merging multiplicitous convictions to circumvent double jeopardy concerns.

¶34 We now clarify that when a mittimus provides that two multiplicitous convictions merge or that one such conviction merges into the other, the defendant is afforded the protection to which he is entitled under the double jeopardy clause just the same as when a mittimus indicates that one of two multiplicitous convictions is vacated.[12] Hence, merely because the original mittimus merged Wood's multiplicitous murder convictions, rather than expressly stating that one of them was vacated, it does not follow that Wood's double jeopardy rights were violated.

¶35 The Tenth Circuit seemed dubious of the original mittimus in part because it concluded that the merger was "*only* for the purpose of imposing [a single] sentence." *Wood*, 721 F.3d at 1196. But the original mittimus did not state that the merger was for the purpose of issuing a single sentence. It simply mentioned that Counts 1, 2, and 3

---

[12] To avoid confusion, when a trial court merges two multiplicitous convictions, as opposed to merging one such conviction into the other, the mittimus should spell out the resulting merged conviction.

"merged and defendant [was] sentenced to [one] life" imprisonment term. The transcript of the sentencing hearing corroborates our reading of the original mittimus. Defense counsel and the prosecutor agreed that the convictions for second-degree murder and aggravated robbery had to merge into the conviction for first-degree murder and that only one sentence, for first-degree murder, should be imposed. Neither attorney ever said, or even intimated, that the merger of the multiplicitous convictions was solely for the purpose of imposing a single sentence. More importantly, the judge never made such a suggestion. Instead, he ruled that the multiplicitous convictions merged and then proceeded to sentence Wood to one life imprisonment term for the resulting merged conviction. The original mittimus subsequently attempted to document the judge's oral ruling and sentence.

¶36    In any event, to the extent the Tenth Circuit discounted the merger, its analysis runs headlong into Colorado jurisprudence. Neither we nor any panel of the court of appeals has ever held that merger fails to avert double jeopardy exposure when it is done for the purpose of imposing a single sentence. Regardless of the motivation behind it, so long as merger protects against punishments the legislature hasn't authorized, there is no infringement of the double jeopardy clause.

¶37    In sum, we conclude that there was no double jeopardy defect or clerical error in the original mittimus. Accordingly, there was no need for a remedy or correction.

20

## B. Even if There Was an Error, Rule 36 Provided the Proper Remedy

¶38    We have determined that the Tenth Circuit misread the original mittimus. But even if it understood that mittimus correctly, the proper remedy was to allow the state district court to correct it pursuant to Rule 36 of our Rules of Criminal Procedure.

¶39    Rule 36 provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time." We have explained that "clerical errors in a . . . mittimus" may be corrected pursuant to Rule 36. *Glover*, 893 P.2d at 1316. Courts have also relied on Rule 36 to correct "errors made by the clerk"—such as in entering a judgment or a sentence—as well as any "mistakes apparent on the face of the record, whether made by the court or counsel during the progress of the case." *Id.* (quoting *Town of De Beque v. Enewold*, 606 P.2d 48, 54 (Colo. 1980)). Rule 36 not only allows "perfunctory changes to correct grammar and to strike meaningless repetitions," *People v. Emeson*, 500 P.2d 368, 369 (Colo. 1972), it also authorizes the trial court to correct a clerical or ministerial error "in order to show the judgment that was actually pronounced," *Glover*, 893 P.2d at 1316.

¶40    To the extent Rule 36 affords the trial court an opportunity to ensure that judgments and sentences are documented accurately, it is consistent with long-established Colorado case law. *Emeson*, 500 P.2d at 369. Indeed, in *Emeson*, we explained that a judge has historically been allowed to "correct or amend a record so that it speaks the truth." *Id.*; *see also People v. McLain*, 2016 COA 74, ¶ 26, 411 P.3d 1037, 1041 ("[Rule 36] authorizes the district court to amend a judgment to conform to the sentence imposed.").

21

¶41 Still, Rule 36 is not without limits. It does not extend to errors that can "reasonably be attributed to the exercise of judicial consideration or discretion." *Glover*, 893 P.2d at 1316 (quoting *Town of De Beque*, 606 P.2d at 54). As the court of appeals has observed, while "a trial court may correct a recording or transcription error to effectuate the understanding and intent of the parties and the court," it may not substantively "amend[] . . . the sentence itself." *McLain*, ¶ 26, 411 P.3d at 1041.

¶42 Wood contends that Rule 36 is inapplicable because any error in the original mittimus was not clerical and must be attributed to the exercise of judicial consideration or discretion. The record belies this hypothesis. More specifically, the transcript of the sentencing hearing illustrates that the judge and the parties intended to have the second-degree murder conviction merge into the first-degree murder conviction. For that reason, the judge later imposed a single sentence for the murder of the assistant manager (a life sentence). Thus, to the extent that the original mittimus failed to reflect the judge's oral ruling and sentence, it was not as a result of judicial consideration or discretion; it was, instead, as a result of a clerical or ministerial error in drafting the original mittimus, an error the state district court corrected when it amended the mittimus in 2014.

¶43 Because any error in the original mittimus was clerical in nature, not the result of judicial consideration or discretion, the proper remedy was to correct that mittimus pursuant to Rule 36. Such correction would not have amounted to a substantive amendment of the judgment or sentence. Instead, it would have simply effectuated the intent and understanding of the court and the parties at the sentencing hearing. Put

22

differently, the correction of any error in the original mittimus would merely have allowed the mittimus to speak the truth.

### III. Conclusion

¶44    We conclude that the Tenth Circuit misread the original mittimus. There was no double jeopardy defect or clerical error in that mittimus. The only error was in believing there was an error. And even if the Tenth Circuit correctly understood the original mittimus, any error should have been corrected pursuant to Rule 36. Since the division assumed that the Tenth Circuit's reading of the original mittimus was accurate and then failed to recognize that any error was subject to correction under Rule 36, we reverse its judgment and vacate its opinion.

23